OPINION
The relevant facts of this case are as follows. In June 1996, LCCSB was awarded permanent custody of three children of appellant. Thereafter, on December 30, 1996, appellant gave birth to Mae S. LCCSB was notified of the birth and on December 31, 1996 the lower court granted LCCSB emergency custody of Mae. On January 2, 1997, LCCSB filed a complaint in dependency seeking permanent custody of Mae and a shelter care hearing. At the shelter care hearing, held on that same day, the court awarded temporary custody of Mae to LCCSB. The court further ordered appellant to undergo a psychiatric assessment and Donald S., the father of Mae, to undergo a psychological evaluation. Subsequently, the court appointed Elizabeth Ladd as a guardian adlitem for appellant. On March 25, 1997, Ladd submitted a report to the court after consulting appellant, appellant's attorney, and Gayle Adams, the LCCSB caseworker assigned to appellant's earlier case with LCCSB and the present case. Ladd also reviewed LCCSB's case file on appellant which revealed appellant's history of mental illness and inability to comply with case plan services. Ladd, however, deferred a recommendation as to whether it was in appellant's best interest to lose custody, until she could question mental health experts at trial.
The case proceeded to the disposition and adjudication hearings on March 26 and 27, 1997. Preliminarily, Donald S., Mae's father, permanently surrendered his parental rights to Mae. The court then heard testimony on the dispositional issues. At the conclusion of appellee's case in chief, Ladd requested to be removed as appellant's guardian ad litem. Ladd stated that she believed appellant was competent to determine whether she wanted to testify, that appellant was adamant that she be permitted to testify on her own behalf and that Ladd did not believe that it was in appellant's best interest to testify. Appellant's trial counsel also submitted to the court her belief that appellant was competent but requested that, due to appellant's emotional condition, Ladd remain as the guardian ad litem. The court concluded that because both Ladd and appellant's attorney found appellant to be competent, there was no further need for the guardian ad litem and therefore granted Ladd's request to be removed. At the conclusion of the adjudication phase, the court found that LCCSB had proven by clear and convincing evidence that Mae was a dependent child. The parties then presented witnesses in the dispositional phase.
On April 3, 1997, the lower court filed its judgment entry terminating appellant's parental rights and granting LCCSB permanent custody of Mae. Initially, the court stated that it found Mae to be a dependent child based upon clear and convincing evidence of appellant's chronic mental illness which interferes with her judgment. With regard to disposition, the court found that LCCSB had proven by clear and convincing evidence that it was in Mae's best interest to grant permanent custody of her to LCCSB and that Mae cannot or should not be placed with appellant within a reasonable time. Specifically, the court found:
 "Ms. M[.] lost custody of three other children in June of 1966 [sic] after case plan services were offered to her. Her mental health was an issue in that case and she received a psychological evaluation that identified the nature of her illness. Subsequent to that time, she was offered counseling to address her mental illness. Never, during the prior case, did she gain insight into her illness.
 "Psychologist Jerome Zake recently evaluated Ms. M[.] again and concluded much the same as Psychologist Eric Nicely had concluded in 1994. Further, Ms. M[.] again shows little amenability to treatment of her on-going illness and little willingness to engage constructively with L.C.C.S.B."
Based on these findings, the court awarded permanent custody of Mae to LCCSB and terminated all parental rights in and to the child.
It is from that judgment that appellant now appeals, raising the following assignments of error:
 "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT MOTHER BY GRANTING PERMANENT CUSTODY OF THIS CHILD TO LUCAS COUNTY CHILDREN'S SERVICES BECAUSE THE STATE FAILED TO MEET THE BURDEN OF PROOF AND THE JUDGMENT WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY DENYING HER DUE PROCESS BY ALLOWING HER GUARDIAN AD LITEM TO WITHDRAW AT THE CONCLUSION OF THE ADJUDICATION AND BY THE COURT LIMITING THE GUARDIAN AD LITEM'S PARTICIPATION IN TRIAL."
In her first assignment of error, appellant asserts that the trial court's judgment was not supported by the manifest weight of the evidence. The standards for ruling on a motion for permanent custody are set forth in R.C. 2151.353 and R.C.2151.414. R.C. 2151.353(A)(4) provides that if a child is adjudicated dependent, the court may commit the child to the permanent custody of the children services agency. R.C. 2151.414
then reads in pertinent part:
 "(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 "(1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
"* * *
 "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
 "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
"* * *
"(12) Any other factor the court considers relevant."
Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954),161 Ohio St. 469. This court will not disturb a trial court's determination relative to the termination of parental rights and an award of permanent custody where such a determination is supported by clear and convincing evidence. In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, paragraph three of the syllabus.
In support of her first assignment of error, appellant contends that there was insufficient evidence to support the trial court's conclusion that appellant's chronic mental illness prevented Mae's placement with appellant within a reasonable time. In particular, appellant asserts that most of the testimony offered by appellee concerned the previous case in which LCCSB was awarded permanent custody of appellant's three other children. See In the Matter of: Gary M., Mary M. and Johnathon M. (May 22, 1998), Lucas App. No. L-96-210, unreported.
At the adjudication hearing below, three witnesses who had been involved in the previous case testified on behalf of appellee[1]. Gayle Adams, the LCCSB ongoing caseworker assigned to appellant, testified that she initially became involved with appellant and her children in July 1994. She stated that she compiled a case plan and provided and monitored services throughout the case but that ultimately, LCCSB was awarded permanent custody of appellant's older three children in June 1996. Adams testified that the primary issue in that case was appellant's mental health. Accordingly, appellant was referred to Dr. Eric Nicely for a psychological evaluation and to Dr. Cynthia Evans for a psychiatric evaluation. She also underwent therapy with a different therapist. Adams stated, however, that at the time of the permanent custody hearing it was apparent that appellant's mental health issues would not be rectified to a point which would decrease the risk to the children. Adams further testified that because the case file was not yet closed when Mae was born, she continued to be appellant's caseworker and has had regular contact with appellant since Mae's birth.
Dr. Eric Nicely next testified. Appellant was referred to him by appellee for a psychological evaluation in August 1994. Upon evaluating her, Dr. Nicely concluded that appellant suffered from a delusional disorder. In his report, he cited the following examples of appellant's delusional thinking:
 "1) belief that as a child she was held down by teenagers and injected repeatedly with syringe needles, 2) that in Kansas, she was responsible for baby-sitting more than thirty children simultaneously, 3) belief that CSB caseworkers were injecting her own children with syringe needles, 4) belief that she had a good relationship with her physician when in fact, he terminated her as a patient due to her aggressive and disruptive office behavior, 5) belief that she has involved the FBI in her struggle against CSB, 6) belief that she has been raped on various occasions under the most bizarre of circumstances."
Based on his evaluation of her, Dr. Nicely recommended that appellant undergo a psychiatric evaluation so that she could be prescribed medication. He also recommended extensive psychotherapy. He testified that, absent these remedies, his prognosis for appellant was very guarded. Although he also stated that appellant's condition resists treatment. Upon questioning by Ladd, appellant's guardian ad litem, Dr. Nicely testified that appellant's condition is chronic and that losing another child would cause her to become emotionally out of control. However, he further testified that keeping the child would not have a markedly positive effect on her condition. Rather, he stated that appellant needs adequate psychiatric care but he further revealed that most people with appellant's condition resist complying with such care.
Finally, Debbie Morgel, appellant's therapist from April 1995 to March 1996, testified at the adjudication phase. She too diagnosed appellant as having a delusional disorder and stated that such disorders were very difficult to treat. Morgel then testified that appellant believed that Morgel and LCCSB were part of a plot to take her children away from her. Finally, Morgel testified that appellant made no progress in the therapy, and that appellant was not interested in taking any medications because she did not believe that she had a problem.
At the disposition hearing, which immediately followed the adjudication hearing, many of the same witnesses, as well as others, testified on behalf of appellee. Initially, Dr. Jerome Zake, a psychologist who evaluated appellant approximately one week before the hearing, testified. Appellant was referred to him for a psychological assessment. He met with her twice and administered the MMPI2 and other tests although he admitted that he had not finished the intelligence test and he had not received the results of the MMPI2 test. Nevertheless, Dr. Zake opined that appellant has paranoid characteristics and is possibly a paranoid schizophrenic although he would not rule out a delusional disorder which, he stated, implies that an individual's thought processes are not enough to be characterized as schizophrenic. With regard to treatment, Dr. Zake stated that appellant indicated that she would be willing to engage in counseling but was determined not to take medication because of the side effects. However, appellant also revealed to Dr. Zake that she did not believe she had any serious mental health problems. Finally, Dr. Zake also testified that appellant's prognosis was guarded at best and poor in terms of change.
Next, Dr. Cynthia Evans, a psychiatrist who evaluated appellant in 1995, testified. Based on her evaluation, she opined that individuals with appellant's disorder do sometimes respond positively to anti-psychotic medications but that it is often difficult to get those patients to take their medication because they do not believe that they have a problem. However, she further stated that she never discussed the possibility of taking medication with appellant because appellant was only referred to her for an evaluation.
Gayle Adams, the LCCSB caseworker, testified regarding disposition. She stated that she has worked with appellant for approximately two and one-half years and has not been satisfied with appellant's progress. In addition, she stated that over those two and one-half years, appellant has become more delusional and antagonistic. She recommended that LCCSB be granted permanent custody of Mae so that she could be adopted by the family who presently has custody of appellant's other three children. She further stated that permanent custody would be in Mae's best interest. Finally, Janet Veres, Mae's guardian ad litem, recommended that permanent custody of Mae be awarded to LCCSB. This recommendation supplemented a report which Veres had filed with the court prior to the hearing.
Based on the above, we conclude that there was clear and convincing evidence presented at the permanent custody hearing to support the trial court's findings that it was in the best interest of Mae to grant permanent custody of her to LCCSB and that Mae could not, or should not, be placed with appellant within a reasonable time. Moreover, we find ample evidence to support the trial court's conclusion that appellant suffers from a chronic mental illness that interferes with her judgment as a parent. Although much of the testimony related to the manifestations of appellant's illness prior to Mae's birth, R.C. 2151.414(E)(2) refers to "chronic mental illness." Accordingly, in our view, evidence of appellant's mental condition both before and after Mae's birth was relevant and necessary to the court's duty under R.C. 2151.414(E).
The first assignment of error is, therefore, not well-taken.
In her second assignment of error, appellant asserts that the trial court erred in limiting the guardian ad litem's participation in the trial and by allowing the guardian to withdraw at the conclusion of the adjudication phase.
With regard to the court's limiting of the guardian's participation, appellant refers to the court's permitting the guardian to only question those witnesses which were expert witnesses. The role of the guardian ad litem is to investigate the ward's situation and then to ask the court to do what the guardian feel's is in the ward's best interest. In re Baby GirlBaxter (1985), 17 Ohio St.3d 229, 232. In the present case, the guardian ad litem did investigate her ward's situation and filed a report on March 25, 1997. The guardian, however, concluded her report by stating:
 "As an attorney without any formal mental health training, I do not feel competent to make a recommendation as to whether or not it is Ann's best interest to lose custody of another child to CSB. I would, therefore, respectfully ask the Court to allow me to question the mental health experts on that ultimate issue at trial and make a recommendation at the conclusion of the Trial."
In keeping with the guardian's request, the trial court allowed her to question the mental health experts who testified during the adjudication phase of the trial. Ladd chose to only question Dr. Nicely. In her examination of him, Ladd asked Dr. Nicely for his opinion as to what effect losing another child would have on appellant's psychiatric condition. Dr. Nicely opined that, while losing another child would likely trigger a decompensation in appellant's emotional condition, keeping her child would not have a markedly positive effect because her condition is chronic. Given that appellant was represented by separate counsel at the trial below, we find no abuse of discretion in the trial court's limiting the guardian's questioning to the expert witnesses at the adjudication phase. See In the Matter of: Shawn W. (Sept. 30, 1996), Lucas App. No. L-95-267, unreported.
Finally, appellant asserts that the trial court erred in allowing the guardian ad litem to withdraw at the conclusion of the adjudication phase of the trial below. Juv.R. 4(B)(3) and R.C. 2151.281(C) provide that the juvenile court shall appoint a guardian ad litem to protect the interests of an adult when that adult appears to be mentally incompetent. Juv.R. 4(F) then provides that the guardian ad litem "* * * may withdraw only with the consent of the court upon good cause shown." In the present case, the trial court granted the guardian's request to withdraw after both the guardian and appellant's trial counsel concluded that appellant was competent to testify. Appellant's trial counsel did, however, object to the guardian's withdrawal in view of appellant's emotional condition which, counsel asserted, was different from appellant's competence. The court concluded that because both the guardian and appellant's counsel agreed that appellant was competent, appellant no longer needed a guardian and, therefore, granted the guardian's request.
At the trial below, numerous mental health experts who had worked with and evaluated appellant testified as to her mental problems. Given this overwhelming evidence, we fail to see how appellant's trial counsel and guardian ad litem were qualified to determine whether appellant was mentally incompetent. We therefore find that the trial court abused its discretion in granting the guardian's motion to withdraw. Nevertheless, we find that the abuse of discretion did not amount to prejudicial error. The guardian did investigate on behalf of appellant and did file a report as required by statute. Although the guardian failed to make a recommendation on the ultimate issue, she did elicit testimony on that issue. Moreover, it is the juvenile court, not the guardian, who determines the ultimate issues on a complaint requesting permanent custody. See In the Matter of: Shawn W.,supra. The guardian provided the court with the necessary information to make those determinations and there is nothing in the record to suggest that the court failed to follow its statutory duty.
Accordingly, the second assignment of error is not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Peter M. Handwork, P.J.
 George M. Glasser, J.
 Richard W. Knepper, J.
CONCUR.
[1] Although additional witnesses testified at the adjudication phase, the testimony of the three discussed herein is relevant to the issues on appeal.