IN RE BABY GIRL BAXTER.

[Cite as In re Baby Girl Baxter (1985), 17 Ohio St. 3d 229.]

230

(No. 84-1340—Decided June 12, 1985.)

John C. Childers, assistant prosecuting attorney, for appellee.

*Southeastern Ohio Legal Services* and *Maria Losurdo,* for appellant.

*Theodore Kern,* urging reversal for *amicus curiae,* Ohio Legal Rights Service.

*National Center for Youth Law* and *Teresa Demchak,* urging reversal for *amici curiae,* William and Jeannine Deweese.

*Burnstein, Walker & Bull* and *Robert Walker,* urging reversal for *amicus curiae,* Association for Retarded Citizens of Cuyahoga County.

*Douglas A. Baker,* urging reversal for *amicus curiae,* Ohio Psychological Association.

DOUGLAS, J. This case raises three issues. The first is whether Evelyn Baxter was denied the proper representation of counsel during the proceedings in Carroll County Juvenile Court.

R.C. 2151.352 and Juv. R. 4(A) provide for the appointment of counsel in cases where parental rights are subject to termination. Furthermore, this court has held that the state must appoint counsel for indigent parents at parental termination proceedings. *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6 [15 O.O.3d 3]. Juv. R. 4(B)(3) and R.C. 2151.281 mandate that the court appoint a guardian ad litem to protect the interests of an incompetent adult in a juvenile proceeding where the parent appears to be mentally incompetent.

Juv. R. 4(C) expressly allows appointed counsel to also serve as guardian ad litem. Appellant now argues that Heflin, who served as both her attorney and guardian ad litem in juvenile court, had conflicting duties and that he, therefore, failed to provide her with proper representation.

The duty of a lawyer to his client and the duty of a guardian ad litem to his ward are not always identical and, in fact, may conflict. The role of guardian ad litem is to investigate the ward's situation and then to ask the court to do what the guardian feels is in the ward's best interest. The role of the attorney is to zealously represent his client within the bounds of the law. DR 7-101; DR 7-102.

We have carefully reviewed the entire record in this case and based on that review find that Heflin was put in the position of being required to ask the court, as guardian ad litem, to do what he felt was in his ward's best interests and simultaneously being required to champion his client's cause in his capacity as her attorney. Since Heflin felt his ward-client's wishes were not beneficial to her, he was in an impossible situation. That is why, for example, he elicited testimony from the welfare department social worker that his ward-client had previously had a child out of wedlock and why he elicited testimony from the psychologist that his ward-client would have great difficulty in caring for her child. Indeed, he elicited testmony from Evelyn that her boyfriend (who is allegedly Baby Girl Baxter's natural father) stays with Evelyn whenever he is in Carrollton. All of this evidence was detrimental to Evelyn's legal case but was beneficial in helping the court to decide what was best for Evelyn. Heflin highlighted the problem during the closing argument of the evidentiary hearing when he said, "as Guardian Ad Litem I'm in a rather difficult position * * *."

Considering the foregoing, we hold that when an attorney is appointed to represent a person and is also appointed guardian ad litem for that person, his first and highest duty is to zealously represent his client within the bounds of the law and to champion his client's cause. If the attorney feels there is a conflict between his role as attorney and his role as guardian, he should petition the court for an order allowing him to withdraw as guardian. The court should not hesitate to grant such request.

Thus, we find that Evelyn Baxter was denied the proper representation of counsel during proceedings in the juvenile court.

The second issue in this case is whether the juvenile court must hold separate adjudicatory and dispositional hearings in proceedings where parental rights are subject to termination. Herein, the juvenile court combined the adjudicatory and dispositional hearings. Both the Juvenile Rules and the Revised Code prescribe that such proceedings be bifurcated into separate adjudicatory and dispositional stages. Juv. R. 29 deals with the adjudicatory hearing. It states that if the allegations in the complaint are proved, the court "shall * * * enter an adjudication and proceed forthwith to disposition." Juv. R. 29(F)(2)(a). R.C. 2151.35 also deals with hearing procedures in juvenile court. It states that if the court finds a child is a dependent child, "the court shall proceed immediately, or at a postponed hearing, to hear the evidence as to the proper disposition to be made * * * ."

Juv. R. 34 deals with the dispositional hearing. It states that "[t]he dispositional hearing may be held immediately following the adjudicatory hearing or at a later time fixed by the court."

The law commands that the proceedings be bifurcated into separate adjudicatory and dispositional hearings because the issues raised and the procedures used at each hearing differ. The issue at the adjudicatory stage of a dependency case is whether petitioner has proven, by clear and convincing evidence, that the child is in fact dependent. The issue at the dispositional stage involves a determination of what is in the child's best interests. There must be strict adherence to the Rules of Evidence at the adjudicatory stage. Yet, "any evidence that is material and relevant, including hearsay, opinion and documentary evidence," is admissible at the dispositional stage. Juv. R. 34(B)(2).

Accordingly, we find that the trial court committed reversible error by failing to follow specifically the Juvenile Rules and the Revised Code by not bifurcating the adjudicatory and dispositional hearings.

The third issue in this case is whether, after a dispositional order made pursuant to R.C. 2151.353(A)(4), a juvenile court must make an attempt to reunify the family by ordering the preparation of a reunification plan.

After a child has been adjudicated dependent in an action and a disposition is to be made pursuant to R.C. 2151.353, the court has four options. The court may permit the child to remain with the parent subject to court conditions and limitations, including supervision. R.C. 2151.353(A)(1). The court may commit the child to the temporary custody of the welfare department, county children services board, either parent or a relative, or a probation officer. R.C. 2151.353(A)(2). The court may commit the child to the temporary custody of any institution authorized by the state to provide care or treatment to the child, R.C. 2151.353(A)(3), or the court may commit the child to the permanent custody of the welfare department, R.C. 2151.353(A)(4). R.C. 2151.412(A) requires that if the

R.C. 2151.353(A)(2) or (3) options are utilized, the welfare department must submit an initial plan to reunite the family.

In the instant case, the juvenile court utilized the R.C. 2151.353(A)(4) option and granted permanent custody to the welfare department. R.C. 2151.412 does not require that a court order a reunification plan when it makes disposition pursuant to R.C. 2151.353(A)(4). Therefore, we hold that the trial court committed no error by not requiring that a reunification plan be filed and implemented.

It should be noted that it is not the intention of this court to suggest that the juvenile court is forbidden, upon remand and reconsideration, from finding Baby Girl Baxter dependent and from terminating the parental rights of Evelyn Baxter if the facts and law support such action. We have simply stated that the court may not make those determinations unless: (1) Evelyn Baxter is represented in all juvenile court proceedings by an attorney who zealously represents her within the bounds of the law, and (2) the court holds separate adjudicatory and dispositional hearings. Furthermore, the court may order that Baby Girl Baxter remain in the custody of the welfare department pending further legal proceedings.

The judgment of the court of appeals is hereby reversed and this cause is remanded to the juvenile court for further proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

SWEENEY, LOCHER and C. BROWN, JJ., concur.

CELEBREZZE, C.J., concurs separately.

WRIGHT, J., concurs in judgment only.

HOLMES, J., dissents.

CELEBREZZE, C.J., concurring. I concur with the majority's conclusion that the judgment of the court of appeals must be reversed and the cause remanded to the juvenile court for further proceedings. I write additionally to clarify three points which may not be adequately addressed in the majority's opinion.

First, the majority concludes that a court should not hesitate to appoint new counsel if a lawyer, who is serving both as attorney and guardian ad litem, petitions the court for an order allowing him to withdraw as guardian because of a conflict in his roles. I agree, but add that the court should not rely solely on the attorney to bring such a conflict to its attention. There may well be occasions where counsel does not perceive the conflict or otherwise fails to petition the court. In such cases it is the court's

duty to *sua sponte* appoint separate counsel if in the court's view a clear conflict appears.

The second point concerns that portion of the majority's opinion relative to bifurcation of the proceedings. I again agree with the majority's conclusion that the juvenile court in this case did not properly bifurcate the proceedings. However, the Juvenile Rules and the Revised Code do not require actual separation into two hearings as the majority implies. A single proceeding may be held so long as there is a shift in emphasis "* * * from an adjudicative to a dispositional perspective." *In re Cunningham* (1979), 59 Ohio St. 2d 100, 108 [13 O.O.3d 78].

Lastly, I concur with the majority's holding in paragraph two of the syllabus that the Revised Code does not require a juvenile court to consider a reunification plan in all cases. However, in the case *sub judice* the juvenile court judge based his dispositional decision chiefly on the permanent nature of the mother's mental retardation. I find scant, if any, other relevant evidence in the record which supports the court's conclusion that it was in the best interests of the child to remove her *permanently* from her mother's custody.

While I believe the mother's mental retardation supports an initial finding of dependency in this case, standing alone it does not support the court's dispositional determination.

In permanently terminating this mother's fundamental right to her child, not to mention the child's right to her natural mother, the court's focus in the dispositional stage should have been on Evelyn Baxter's potential (and progress) in acquiring the skills, judgment and knowledge needed to parent. In this case, based on the evidence presented, consideration of a reunification plan was warranted to determine the feasibility of less drastic alternatives. Cf. *In re Cunningham, supra,* at 104-105.

HOLMES, J., dissenting. I must dissent from the majority opinion in that, in my view, the appointment of the same person as the attorney to represent one who is mentally incapacitated would not *per se,* nor under the circumstances of this case, render that person as being in conflict if appointed as guardian ad litem for the incompetent adult. In some instances, particularly where counsel states his feeling of conflict, there may well be a case where separate counsel should be appointed. But I do not find the facts here compelled such dual appointments. At least, the failure to do so is not prejudicial error. Further, Juv. R. 4(C) expressly allows appointed counsel to also serve as guardian ad litem. If this practice is not desirable, the rule should be amended by the appropriate procedure.

As to the bifurcation of the adjudicatory and dispositional proceedings, it must be pointed out that neither R.C. 2151.35 nor Juv. R. 29(F)(2)(a) requires a separate hearing concerning these statutory considerations. They merely require some separation of the total proceedings so that each may

236

be reviewed by the trial court with the appropriate evidentiary rules being applied to the adjudication.

While bifurcation may be a desirable procedure in selected cases (for example, where the evidence relevant to adjudication is wholly different from the evidence relevant to disposition, or where the evidence relevant to disposition would be inadmissible or prejudicial as to the issues raised in adjudication), there is an absence of an absolute requirement that a trial judge bifurcate the proceedings in every dependency case. As is conceded by appellant, "[b]ifurcation is not expressly called for in the Juvenile Rules or statute * * *." In this matter there exists no rational reason whatsoever to require a bifurcation of the hearing.

In the instant case appellant was in no way prejudiced by the failure of the court to bifurcate the hearing into separate adjudicatory and dispositional phases. There was a lack of evidence admitted at the un-bifurcated hearing which would not have been admissible at both adjudication and disposition had the proceedings been bifurcated. The evidence relevant as to adjudication is the same evidence that is relevant to disposition. The only effect of bifurcation in this case would have been to require the trial judge to hear the same evidence twice.

In any event, the issue of bifurcation was never raised at trial. The hearing was conducted without bifurcation without objection from anyone. It is axiomatic under Ohio law that in order to preserve an issue for appeal one must bring the claimed error to the attention of the trial court in time to avoid the commission of the claimed error in the first place.

Accordingly, I dissent from the majority opinion.