**In the matter of McMunn**
**Case No. 88CA8**
**Hocking County (4th)**
**Decided January 24, 1990**
[Cite as 1 AOA 154]

*Ms. Patricia J. Nangle, Logan, Ohio, for Appellant Connie McMunn.*[1]

*Mr. Larry A. Tracy, Hocking County Assistant Prosecuting Attorney, Logan, Ohio, for Appellee Hocking County Children's Services Board.*

HARSHA, J.

This is an appeal from a judgment entered by the Hocking County of Common Pleas, Juvenile Division, which granted the motion of Hocking County Children's Services Board, plaintiff- appellee, for permanent custody of Edward Jason McMunn and Stuart James McMunn, terminating the parental rights of Connie McMunn, mother of the aforesaid children and defendant-appellant herein, and placing these minor children in the permanent custody of appellee.

Appellant assigns the following errors:

I. THE JUVENILE COURT ERRED IN NOT APPOINTING A GUARDIAN AD LITEM FOR A MENTALLY RETARDED ADULT AND THEREBY VIOLATED APPELLANT'S CONSTITUTIONAL AND STATUTORY RIGHTS.

II. THE JUVENILE COURT ERRED IN THE GRANTING PERMANENT CUSTODY OF THE CHILDREN TO HOCKING COUNTY CHILDREN SERVICES IN THAT THERE IS A TRUE PARENT-CHILD RELATIONSHIP BETWEEN APPELLANT AND HER CHILDREN.

III. RC SECTION 2151.414, IS UNCONSTITUTIONAL DUE TO IT'S(sic) VAGUENESS AND OVERBREADTH AS APPLIED."

Appellant and Stuart McMunn were married and Stuart James (Jimmy) McMunn (DOB 11/5/76) and Edward Jason (Jason) McMunn (DOB 11/13/78) were born as issue of the marriage. On June 17, 1982, appellee filed a complaint which alleged that the children were dependent children. On June 30, 1982, the court below found them to be dependent children and placed them in the protective supervision of appellee, although appellant and Stuart McMunn retained custody. Appellant and Stuart McMunn were divorced in October, 1984. On March 18, 1985, Jason was removed from appellant's home under a temporary agreement for care upon appellant's request. Appellant had advised appellee that Jason should be placed in foster home because she felt unable to control his behavior.

On May 6, 1985, appellee field a complaint which alleged that the children were sexually abused children. Jimmy was removed from appellant's home for four to five days and was then placed back with appellant after allegations involving appellant and her ex-husband regarding the sexual abuse could not be substantiated. Subsequently, there was an admission that the children had been sexually abused by a twelve year old cousin. On August 21, 1985, appellant stated that she was unable to control Jimmy and wanted appellee to take him away. Appellee placed Jimmy in foster care.

Following the removal of both children from appellant's home at her request, appellee drafted a comprehensive reunification plan in an attempt to reunify appellant with her children. This plan specifically noted that appellant was mentally retarded and that she had full scale IQ of only 64. Among the stated objectives of the reunification plan were to maintain parental involvement, improve the home environment, improve parental functioning, improve children's emotional well-being by reducing any behavioral problems, and enhance the parent-child relationship. Shortly after this case plan was established in August, 1985, appellant's ex-husband, the father of the children herein, left the home relinquished his parental rights to the children. On October 1, 1985, the trial court determined that the two children were abused children and granted temporary custody of the children to appellee. On October 11, 1985, the comprehensive reunification plan was filed and incorporated into a journal entry by the trial court.

On April 9, 1986, appellee filed a motion for permanent custody of appellant's children which alleged, in pertinent part, that appellee had made a good faith effort to implement the initial and comprehensive reunification plans, that appellant had acted in such a manner that the children were, and would continue to be, without adequate care, and that it was in the best interests of the children to permanently terminate appellant's parental rights. Appellee's motion for permanent custody further noted that appellant had consistently failed to comply with the goals and objections of the comprehensive reunification plan and that appellant's ability to care for the children "through no fault of her own" was extremely limited such as to be directly detrimental to the

children's welfare.

On May 20, 1986, a hearing was held on appellee's motion for permanent custody and on December 11, 1986, the trial court entered judgment granting appellee's motion, specifying within the entry that appellant was "retarded". On appeal, this court, on June 3, 1987, reversed the judgment and remanded this case to the trial court for further proceedings.

On October 6 and 7, 1988, an adjudicatory hearing on appellee's motion for permanent custody was held at which the following pertinent evidence was adduced. Following the removal of both children from appellant's home, appellant had weekly supervised visitation with the children which lasted one to two hours. Patricia Ann Stock, a caseworker for appellee, testified that during this visitation there was a lack of interaction between children and appellant, a lack of supervision and discipline of the children by appellant, and behavioral problems experienced by the children as a result of their visitation with appellant. A psychological report of Anne V. Phelps, M.A., and Henry Leland, Ph. D., noted that appellant's "physical restrictions" impaired her ability to provide the structured environment her children needed for adequate emotional growth and that is not likely that appellant had the ability to care and support her children in a maternal manner. Thomas Fish, a licensed social worker, testified that if appellant's children remained in her care, both children would be at risk for serious emotional problems.

On October 21, 1988, the trial court filed an entry which included findings of facts and conclusions of law and found that appellee had made a good faith effort to implement the approved initial and comprehensive reunification plans and that appellant had acted in a manner that the children were without adequate parental care and appellant would continue to act in the near future in such a manner that her children would be without adequate parental care.

On November 4, 1988, a dispositional hearing was held and Cheryl Proctor, a caseworker for appellee, testified that appellant's children's behavior regressed after each visitation with appellant, that interaction during visitation between appellant and her children was still very minimal, that appellant could not properly discipline them, and that permanent custody would be in the children's best interests. Hazel Johnson, appellant's mother, testified that appellant could not take care of the children by herself. On November 8, 1988, the trial court entered a judgment determining that it was in the best interests of the children that appellant's parental rights be determined and thereby granting appellee's motion for permanent custody.

At both the adjudicatory and dispositional hearings, appellant was represented by counsel and the children were represented by a guardian ad item. On December 5, 1988, appellant filed a motion for "RE-HEARING OF MOTION FOR PERMANENT CUSTODY" in the court below based upon the trial court's failure to appoint a guardian ad litem for appellant during the adjudicatory and dispositional hearings.

Appellant's first assignment of error asserts that the trial court erred in not appointing a guardian ad litem for a mentally retarded adult and thereby violated appellant's constitutional and statutory rights.

Juv. R. 4(B) provides as follows:

"The court *shall appoint a guardian ad litem to protect the interests of a child or incompetent adult in a juvenile court proceeding when*:

(1) The child has no parent, guardian, or legal custodian;
(2) The interest of the child and the interests of the parent may conflict;
(3) *The parent is under eighteen years of age or appears to be mentally incompetent*;
(4) Appointment is otherwise necessary to meet the requirements of a fair hearing." (Emphasis added.)

R.C 2151.281 provides as follows:

"(C) In any proceeding concerning an alleged or adjudicated delinquent, unruly, abused, neglected, or dependent child in which the parent appears to be mentally incompetent or is under eighteen years of age, the court shall appoint a guardian ad litem to protect the interest of that parent."

Juv. R. 4(B) (3) and R.C. 2151.281(C) mandate that the court appoint a guardian ad litem to protect the interests of an incompetent adult in a juvenile proceeding. *In re Baby Girl Baxter* (1985), 17 Ohio St. 3d 229; Kurtz and Giannelli, Ohio Juvenile Law (1989) 143, T 11.03. Therefore, in order to determine whether the court herein erred in falling to appoint a

guardian ad litem to protect the interest of appellant pursuant to Juv. R. 4(B) (3) and R.C. 2151.281(C), we must initially consider whether appellant "appear[ed] to be mentally during the proceedings below.

The reunification plan adopted by the court explicitly specified that appellant was mentally retarded and that she had a full scale IQ of only 64. Appellee's April 9, 1986 motion for permanent custody stated that appellant's ability to care for the children was extremely limited "through no fault of her own". Finally, the trial court's initial entry of December 11, 1986 as well as its entries of October 21 and November 8, 1988, stated that appellant was "retarded". Based upon the foregoing, it is manifest that appellant appeared to be mentally incompetent during the proceedings below, and the trial court erred in failing to appoint a guardian ad litem for appellant.

Appellee asserts that even if the trial court's failure to appoint a guardian ad litem for appellant constituted error, appellant was not prejudiced thereby since appellant's trial counsel did "in fact fully and faithfully perform the duties of a guardian ad litem although he was not appointed as such by the Court." The Supreme Court of Ohio has recognized the following distinctions between the roles of guardian ad litem and attorney:

"The duty of a lawyer to his client and the duty of a guardian ad litem to his ward are not always identical and, in fact, may conflict. The role of guardian ad litem is to investigate the ward's best interest. The role of the attorney is to zealously represent his client within the bounds of law. DR 7-101; DR 7-102." *Baxter, supra* at p. 232.

However, Juv. R. 4(C) expressly allows appointed counsel to also serve as guardian ad litem. Where there is evidence of a conflict of interest between an attorney's role as both counsel and guardian ad litem, he should petition the court for an order allowing him to withdraw as guardian ad litem, and the court should not hesitate to grant such request. *Baxter, supra* at p. 232

In the case at bar, upon a review of the record herein, there is absolutely no evidence of any conflict of interest concerning appellant's trial counsel and, furthermore, there is no evidence that, given appellant's representation by counsel below, appellant was in any way prejudiced by the trial court's erroneous failure

to formally appoint a guardian ad litem for her during the permanent custody proceedings. On appeal, appellant is apparently requesting that we presume prejudice whenever the express mandate of Juv. R. 4 is not followed by a trial court. However, under analogous circumstances, the Second and Twelfth District Courts of Appeal have held that any error in failing to appoint a guardian ad litem does not constitute reversible error where there is no request for a guardian ad litem and/or there is no prejudice shown by the appellant. *In the Matter of Likens* (Oct. 24, 1986), Greene App. No. 85 CA 80, unreported; *In re McQuitty* (May 5, 1986), Warren App. No. CA 885-04-016. In a related context, a claim of ineffective assistance of counsel requires in addition to a showing of deficient counsel performance, a further proof of prejudice from such deficient performance. *State v. Bradley* (1989), 42 Ohio St. 3d 136, paragraph one of the syllabus. Appellant's citation of *Baxter* in support of her argument herein is inapposite in that in *Baxter*, the court determined that there had been a "request", however inartfully phrased, for a guardian ad litem, as well as, at least implicitly, a sufficient showing of prejudice:

"We have carefully reviewed the entire record in this case based on that review find that Heflin was put in the position of being required to ask the court, as guardian ad litem, to do what he felt was in his ward's best interest and simultaneously being required to champion his client's cause in his capacity as her attorney. Since Heflin felt his ward-client's wishes were not beneficial to her, he was in an impossible situation. That is why, for example, he elicited testimony from the welfare department social worker that his ward-client had previously had a child out of wedlock and why he elicited testimony from the psychologist that his ward-client would have great difficulty in caring for her child. Indeed, he elicited testimony from Evelyn that her boyfriend (who is allegedly Baby Girl Baxter's natural father) stays with Evelyn whenever he is in Carrollton. All of this evidence was detrimental to Evelyn's legal case but was beneficial in helping the court to decide what was best for Evelyn. Heflin highlighted the problem during the closing argument of the evidentiary hearing when he said, 'as Guardian Ad Litem I'm in a rather difficult

position * * *.'" *Baxter, supra* at p. 232.

Conversely, in the case at bar, appellant asserts no explicit prejudice from the trial court's failure to appoint her a guardian ad litem. Accordingly, in that appellant has failed to meet her burden of showing prejudice resulting from the trial court's error in not appointing a guardian ad litem for her during the permanent custody proceedings, such does not constitute reversible error. Appellant's first assignments of error is overruled.

Appellant's second assignment of error asserts that the trial court erred in granting permanent custody of the children to appellee since there remains a true parent-child relationship between appellant and her children. Appellant cites *In the Matter of Gibson* and *In the Matter of McGraw* (July 19 1979), Franklin App. Nos. 78 AP-856 and 78 AP-857, unreported in support of her second assignment of error. In *Gibson* and *McGraw, supra* at p. 2, the Tenth District Court Appeal held that "where there is a true parent-child relationship and true love exchanged between the parent and child, permanent custody is out of the question even though the mother is unable to provide a proper home for her children."However, *Gibson* and *McGraw* are distinguishable in that the Tenth District Court of Appeals emphasized, *supra* at p. 2, that a review of the entire record in that case revealed "no evidence whatsoever justifying a permanent commitment of the two boys." Conversely, the evidence adduced herein includes testimony that even appellant's mere visitation with her children caused the children to regress emotionally and constituted a step back from their progress engendered by their foster home environment. In short, the record herein is replete with evidence, most particularly from appellant's mother, appellee's caseworkers, and a psychologist that supports the trial court's order of permanent custody herein. Appellant's second assignment of error is overruled.

Appellant's third assignment of error asserts that R.C. 2151.414 is unconstitutional due to its vagueness and overbreadth as applied. Appellant failed to raise the issue of the constitutionality of R.C. 2151.414 as applied during the proceedings below. Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such and a deviation from this state's orderly procedure, and

therefore need not be heard for the first time on appeal. *In re M.D* (1988), 38 Ohio St. 3d 149, 150 ; *State v. Awan* (1986), 22 Ohio St. 3d 120, syllabus. Therefore, pursuant to *Awan, supra,* appellant's argument on appeal in this regard is waived. For the foregoing reasons, appellant's third assignment of error is overruled, and the judgment of the trial court is affirmed.

ABLE, P.J., HARSHA, J., Concur

---

[1] Appellant was represented by different counsel in the proceedings below.