This matter is before the court on appeal from a judgment issued by the Lucas County Court of Common Pleas, Juvenile Division, which terminated appellants' parental rights, and granted permanent custody to Lucas County Children Services Board ("LCCSB").
At the October 20, 1998 hearing on LCCSB's complaint for permanent custody the following evidence was adduced during adjudication. Appellants are the natural parents of Jayson M., born July 7, 1998. On the morning of August 18, 1998, appellants brought Jayson to the Riverside Hospital emergency room with a leg injury. Dr. Steven Habusta, an orthopedic surgeon, diagnosed the injury as a mid-shaft spiral fracture of the left femur.
Dr. Habusta testified that when he discussed the cause of the injury with appellants, they stated that Jayson and his father were sleeping together and that his father had rolled over on him during the night. Dr. Habusta stated that he had never seen such a young child with that type of injury. He explained that it was a fracture of a weight bearing bone in a non-weight bearing infant. Tests were performed on Jayson to make certain that there was not an underlying bone condition, causing his bones to be unusually brittle. Dr. Habusta also observed a bruise on Jayson's right cheek and stated that a pediatrician working with Jayson had noticed a bruise on his back. Dr. Habusta testified that he found the explanation of how the accident happened to be inconsistent with the type of injury and, since he found the injury suspicious, he referred the case to social services.
Rebecca Battles, a caseworker for Lucas County Children Services, was sent to the hospital to investigate Jayson's injury. Battles spoke with Jayson's mother first. She indicated that she was home with Jayson every day from about 5:30 a.m. until 8:30 p.m. when she left for work. Jayson's father arrived home from work around midnight and watched him until his mother returned. From 8:30 p.m. until Jayson's father returned, his paternal grandmother would babysit.
On the morning after the injury, Jayson's mother arrived home from work and noticed that his leg was swollen and red. She indicated that when the father explained how the injury occurred, she believed him. When questioned about the bruise on Jayson's cheek she said that it probably was a result of him sucking too hard on his pacifier. She stated that she had not noticed the bruise on his back. She also told Battles, when asked, that they had never had contact with children services prior to Jayson's injury, and that Jayson was her first child. Finally, she told Battles that she would separate from Jayson's father if that meant she could keep him.
Battles testified that when she interviewed Jayson's father he was very agitated. He was cursing and swearing and abruptly terminated the interview by leaving the room. He again was visibly agitated when Battles informed him and the mother that there would be a staffing, or meeting with LCCSB personnel to determine the safety risk to the child. Battles further testified that while walking to her car from the hospital, she passed the father who was talking loudly about how children's services was not going to take his child. She stated that she felt personally threatened.
At the staffing, appellants were present and, after another LCCSB employee recognized Jayson's mother, it was discovered that LCCSB had been granted permanent custody of three of her five previous children and that the remaining two had gone into legal custody with relatives. She again reiterated that she would leave Jayson's father if she could keep her baby. Based upon Jayson's age, the nature of the injury, the prior history with LCCSB, the father's unwillingness to utilize available services and the mother's inability to protect Jayson, it was decided that LCCSB would file a complaint for permanent custody.
At the close of Battles' testimony, the court found Jayson to be an abused and dependent child. The case proceeded to disposition and the following evidence was adduced.
Charles Rosenbaum, a caseworker for LCCSB, testified that beginning in 1993, he was involved with Jayson's mother and father regarding her two children from a previous marriage and their other children. Rosenbaum testified that Jayson's father attended services very sporadically and eventually dropped out of treatment. The father did not responded to any of the county's requests for a psychological evaluation and to assess the need for mental health services. Rosenbaum also stated that Jayson's mother would at times admit that there was domestic violence in the home and then deny it at other times.
When Rosenbaum was first assigned to the case, Jayson's parents were living with the father's mother and his stepfather in a home which, based upon its filthy condition, he determined was unfit for small children. The children were removed from the home and placed in LCCSB's custody. In 1994, a fourth child was born and LCCSB was unable to locate where they were living. The child was finally located and placed in LCCSB's custody.
During the period Rosenbaum was involved with appellants, he stated that he was unable to find appropriate relative placement for the children on either the maternal or paternal sides.
Cynthia Harrison testified that she was an ongoing caseworker assigned to appellants' case from December 1995 to May 1997. Harrison had been involved with two of the children. The younger child's father is the appellant in this case, while the older child's father is the mother's former husband. The children had been in temporary custody of LCCSB and were reunified with their mother; however, she failed to abide by the no contact order in relation to the father/appellant and they were removed. The no contact order stemmed from domestic violence incidents and allegations of sexual abuse. Eventually, both fathers and the mother executed permanent custody surrender forms.
Harrison stated that she too had considered relative placement. Specifically, she had spoken to the father's grandmother who had been aware of the no contact order and the fact that her grandson had been in violation of the order. At that time, Harrison felt she was not an appropriate relative because she had concerns about her abiding by the no contact order.
Mark Bostelman, the ongoing caseworker for Jayson's case, testified that appellants had not provided him with the names of any relatives who could be a potential relative placement. He further stated that he had not even considered relative placement in Jayson's case due to prior case studies and, as to Jayson's paternal great-grandmother, questions about her ability to protect Jayson and concerns about her age. Jayson's paternal great-grandmother had been subpoenaed to testify at the hearing but failed to appear.
Next, Jayson's mother testified and described the various parenting classes she had successfully completed. She also stated that she believed she could now protect Jayson. She testified that she and Jayson's father had discussed his need to take parenting classes, but that as of the date of Jayson's injury he had not received any treatment. Appellant further stated that she would choose reunification with her son over remaining with his father.
Finally, the girlfriend of the father's brother testified that about once a week she observed appellants interact with Jayson and saw no inappropriate behavior. She was not aware of the circumstances surrounding the removal of appellants' other children. She also had no knowledge of prior incidents of domestic violence.
Based upon evidence presented at the dispositional hearing, the court, on October 29, 1998, approved the LCCSB's October 6, 1998 case plan, terminated appellants' parental rights and granted permanent custody to LCCSB. Appellants now appeal the judgment and set forth the following assignments of error:
 "The Lucas County Children Services Board's Motion for Permanent Custody was not supported by clear and convincing evidence.
"The Lucas County Children Services Board did not examine all possible relatives in order to secure relative placement.
"The Lucas County Children Services Board did not provide a case plan for reunification to the parents.
"Two months is not a reasonable period of time in which to grant a motion of [sic] permanent custody."
In their first assignment of error, appellants assert that the trial court's award of permanent custody to LCCSB was not supported by clear and convincing evidence. Clear and convincing evidence is "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established." Cross v. Ledford
(1954), 161 Ohio St. 469, 477.
In cases involving an original complaint for permanent custody of a child, made pursuant to R.C. 2151.353(A)(4), a public children services agency must comply with the requisites of R.C.2151.414.
R.C. 2151.414 provides, in relevant part:
 "(A)(1) * * * The court shall conduct a hearing in accordance with section 2151.35 of the Revised Code to determine if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody of the agency that filed the motion. The adjudication that the child is an abused, neglected, or dependent child and the grant of temporary custody to the agency that filed the motion or placement into long-term foster care shall not be readjudicated at the hearing and shall not be affected by a denial of the motion for permanent custody.
"* * *
 "(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 "(1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
 "(2) The child is abandoned and the parents cannot be located;
 "(3) The child is orphaned and there are no relatives of the child who are able to take permanent custody."
In determining the best interest of a child, the court shall consider all relevant factors, including, but not limited to, a list of factors found in R.C. 2151.414(D)[1]. In addition, the court must determine, by clear and convincing evidence, that one or more of the predicate conditions in R.C. 2151.414(E) exists, and, if so, shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.
In the instant case, the trial court found the following predicate conditions under R.C. 2151.414(E):
 "(10) The parent has committed abuse * * * against the child or caused or allowed the child to suffer neglect * * * and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
 "(11) The parent committed abuse * * * against the child or caused or allowed the child to suffer neglect * * * and a sibling of the child previously has been permanently removed from the home of the child's parents because the parent abused or neglected the sibling."
The court further determined that pursuant to R.C. 2151.419 that LCCSB made reasonable efforts to prevent Jayson's removal and that it was in his best interests to be placed in the permanent custody of LCCSB for adoption.
Upon thorough review of the record in this case we find that clear and convincing evidence exists to establish that it was in the best interests of Jayson to be placed in the custody of LCCSB and that the child cannot, or should not, be placed with appellants within a reasonable time. The suspicious nature of Jayson's injury coupled with a long-standing history of abuse and neglect of their other children, and domestic violence incidents, supports the trial court's determination that a condition(s) under R.C. 2151.414(E)(4) existed. Appellants' first assignment of error is not well-taken.
In their second assignment of error, appellants argue that LCCSB failed to examine possible relative placement. Specifically, appellants claim that LCCSB failed to investigate placement with Jayson's great-grandmother or his mother's sisters.
R.C. 2151.412(G)(2) provides that an abandoned, abused or neglected child should be placed in the legal custody of a suitable member of the child's extended family. If, however, no suitable family member exists, the child should be placed in the permanent custody of the public children services agency. R.C.2151.412(G)(5).
This court has consistently held that "the language of R.C. 2151.412(G) is precatory, not mandatory. It does not require the court to favor a relative, rather than the children services agency, in granting custody." In re the Seven A.Children (Sept. 22, 1995), Fulton App. No. F-95-002, unreported. The overriding concern is the best interests of the child. In reTaceia R. (Feb. 16, 1996), Lucas App. No. L-96-155, unreported. See In the matter of Gary M., Mary M. and Johnathon M. (May 22, 1998), Lucas App. No. L-96-210, unreported.
In the instant case, caseworker Bostelman testified that he had not considered any relatives for placement of Jayson. He attributed this to, in part, past history concerning the relatives. Additionally, there were questions regarding the great-grandmother's ability to abide by the no contact order, as well as questions pertaining to her age. Bostelman further testified that appellants did not recommend any relatives for possible placement, when asked.
Jayson's mother testified that when asked about relative placement she gave the names of Jayson's paternal great-grandmother and Jayson's paternal grandmother's husband or boyfriend. She testified that she was aware that LCCSB had removed five of the grandmother's seven children. Jayson's great-grandmother had been subpoenaed to testify and failed to appear.
Upon consideration, this court finds that the trial court's decision not to award custody of Jayson to a relative was not improper. Barring the precatory nature of R.C. 2151.412(G), appellants have not shown that LCCSB failed to consider relative placement. Accordingly, appellants' second assignment of error is not well-taken.
Appellants' third assignment of error alleges that LCCSB erred in failing to provide a case plan for reunification of Jayson with his parents. LCCSB argues that, under its interpretation of the relevant statutory provisions, it was not required to formulate a case plan for reunification.
R.C. 2151.419(A) states that at a hearing held pursuant to R.C. 2151.353, the trial court shall determine whether the agency has made reasonable efforts to prevent the removal of the child. The agency has the burden of proving such reasonable efforts. However,
 "[i]f the agency removed the child from his home during an emergency in which the child could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make the reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts." Id.
Relatedly, under R.C. 2151.412:
 "(A) Each public children services agency and private child placing agency shall prepare and maintain a case plan for any child to whom the agency is providing services and to whom the following applies:
 "(1) The agency filed a complaint pursuant to section 2151.27 of the Revised Code alleging that the child is an abused, neglected, or dependent child;
"(2) The agency has temporary or permanent custody of the child;
 "(3) The child is living at home subject to an order for protective supervision; * * *."
The statutes suggest that both a "reasonable efforts" determination and a case plan is required. However, our review of the statutes reveals that as to R.C. 2151.353(A)(4), which permits the trial court to commit the child to the permanent custody of a children services agency, a reunification plan would be inconsistent with its intended purpose. Moreover, Ohio courts have consistently held that R.C. 2151.412 does not require a trial court to order a reunification plan when it makes a dispositional order pursuant to R.C. 2151.353(A)(4). In re Baby Girl Baxter
(1985), 17 Ohio St.3d 229, paragraph two of the syllabus; In reMoloney (1986), 24 Ohio St.3d 22, 25-26.
In the instant case, as aforementioned, the trial court specifically found, pursuant to R.C. 2151.419, that LCCSB made reasonable efforts to prevent the removal of Jayson from his parents. The trial court further found that Jayson was removed from the custody of his parents during an emergency situation. Thus, having found no error in the trial court's determination, appellants' third assignment of error is not well-taken.
In appellants' fourth and final assignment of error they argue that two months is not a reasonable period of time in which to grant LCCSB permanent custody. Again, R.C. 2151.353(A)(4) provides that a children services agency will gain custody of a child where the trial court determines that the child cannot be placed with either parents within a reasonable time or should not be placed with either parent. The section does not define "reasonable period." Further, R.C. 2151.35 requires that the court hold a dispositional hearing no more than ninety days after the date on which the complaint, pursuant to R.C. 2151.353, was filed. Accordingly, appellants' fourth assignment of error is not well-taken.
The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellants.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ Peter M. Handwork, P.J.
 _______________________________ Richard W. Knepper, J.
 _______________________________ Mark L. Pietrykowski, J.
CONCUR.
[1] These factors are:
 "(1) The interaction and interrelationship of the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The child's need for a legally secure permanent placement and whether the type of placement can be achieved without a grant of permanent custody to the agency."