JOURNAL ENTRY AND OPINION
Appellant-mother, Tonechia Ervin, appeals the decision of the Cuyahoga County Court of Common Pleas, Juvenile Division, which granted the Cuyahoga County Department of Children and Family Services (CCDCFS) permanent custody of two of her children, Jayinna and James Holmes. For the reasons that follow, we vacate the grant of permanent custody to CCDCFS and remand for a new trial.
The record reveals that appellant has five children, of which the oldest two are in the custody of their father, Melvin Jackson. The third child resides with appellant's mother in Atlanta, Georgia. The remaining two children, Jayinna and James Jr., whose dates of birth are July 5, 1998 and September 13, 1999, respectively, are the subject of this appeal. James Holmes is the putative father of both Jayinna and James Jr. and was a minor at the time of their births. Both children have been living with a foster family for most of their lives, except Jayinna has had intermittent periods of residence with appellant while James Jr. lived with appellant from the time of his birth until his removal in November 1999. Appellant was psychologically evaluated in February 1999 at which time results revealed an overall intellectual score in the lower end of the borderline range of mental functioning.
On November 23, 1999, CCDCFS filed an affidavit in support of its motion for pre-dispositional temporary custody requesting that it be granted immediate emergency temporary custody, which was granted ex parte on that date. CCDCFS filed its motion in support thereof as well as its complaint for neglect and permanent custody the following day, November 24, 1999.
Appellant had been involved with CCDCFS prior to the filing of this request for emergency custody and a case plan was established wherein appellant was to insure that she received extra-parental support. Reportedly unable to secure such support and unable to provide care for not only Jayinna but now James Jr. as well, CCDCFS sought emergency custody when appellant voluntarily returned Jayinna to foster care. A guardian ad litem was appointed for the children, Jayinna and James Jr., as well as one for the minor putative father, James Holmes. There was no guardian ad litem appointed for appellant although she and the children's paternal grandmother were appointed counsel.
A probable cause hearing on the emergency order was held on November 30, 1999 wherein probable cause was found for the issuance of the order. Thereafter, the guardian ad litem for the children submitted a report wherein the guardian ad litem recommended that permanent custody be granted to CCDCFS. At the hearing held on February 17, 2000, the trial court adjudicated the children to be dependent and granted permanent custody to CCDCFS.
Appellant is now before this court and assigns the following errors for our review:
 I. THE TRIAL COURT'S GRANTING PERMANENT CUSTODY OF JAYINNA AND JAMES HOLMES TO FAMILY SERVICES WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
 II. TRIAL COURT ERRED IN NOT APPOINTING A GUARDIAN AD LITEM FOR THE APPELLANT.
Appellant's second assignment of error is dispositive of this appeal and will therefore be discussed out of turn. Succinctly, appellant claims it was error for the trial court not to appoint a guardian ad litem for her in light of her borderline mental retardation.
R.C. 2151.281(C) provides, in part:
 In any proceeding concerning an alleged or adjudicated * * * neglected, or dependent child in which the parent appears to be mentally incompetent * * *, the court shall appoint a guardian ad litem to protect the interest of that parent.
The statute's language is mandatory and requires the appointment of a guardian ad litem even when it just appears that the parent is less than mentally competent. See In the Matter of Moore (Sept. 5, 2000), Butler App. No. CA99-09-153, unreported at 14-15. Indeed, it is the appearance of incompetence and not an actual finding of such that triggers the requirement of an appointment of a guardian ad litem.
In this case, appellant was psychologically evaluated at the request of CCDCFS. In its report dated February 4, 1999, test results revealed an overall intellectual score * * * in the lower end of the borderline range of mental functioning. While it was noted that there was nothing to suggest the presence of a major mental illness or mood disorder, the psychologist opined that appellant exhibited limited intellectual abilities and it was not expected that she would do well in situations that required complex long-term planning for any child under her care. As a result, the psychologist concluded that appellant would be unable to parent on an independent basis and thus would require extra-parental support.
The state seems to imply that as long as there was no evidence of moderate or severe mental retardation, the statute does not require an appointment of a guardian ad litem. This is absurd. The statute speaks of the appearance of mental incompetency, not the degree. The record more than adequately demonstrates that appellant fits the description of one appearing to be mentally incompetent and thus requiring the appointment of a guardian ad litem.
The state alternatively maintains that appellant suffered no prejudice as a result of the trial court's failure to appoint a guardian for her, inferring that merely because appellant may be mentally impaired does not mean that she is mentally incompetent. See In re Luzader (Dec. 3, 1997), Summit App. No. 18282, unreported at 2. While this may be true under certain circumstances, if the mental impairment gives the appearance of mental incompetence, the appointment of a guardian ad litem is required under the statute.
In this case, the record demonstrates that the trial court was well aware of appellant's limited intellectual abilities. CCDCFS has an extensive history with appellant. It was well aware of her mental limitations. The three oldest children had already been permanently removed from her home and CCDCFS continued to be involved with appellant from the time of Jayinna's birth. Indeed, CCDCFS required appellant to obtain twenty-four hour parental assistance in implementing its case plan based, in part, on the psychological test results obtained in February 1999. There can be no question that appellant would suffer prejudice without the appointment of a guardian ad litem.
While Juv.R. 4(C) permits an attorney to serve in the dual capacity of appointed counsel and guardian ad litem, the attorney can only do so as long as there is no conflict between the roles. In re Baby Girl Baxter (1985), 17 Ohio St.3d 229, 232. The record before this court, however, does not support that any appointment was made and we will not presume as much merely because appellant was appointed counsel. In re Duncan/Walker Children (1996), 109 Ohio App.3d 841, 844-845; In re Clark (Jan. 18, 2001), Cuyahoga App. No. 76852, unreported at 10. Even if we were to indulge in such a presumption, the roles of each would conflict. In re Baxter, 17 Ohio St.3d at 232; see, also, Bawidamann v. Bawidamann (1989), 63 Ohio App.3d 691, 701-704; In re Freeland (Aug. 9, 2000), Summit App. Nos. 19980, 19981, 19982 and 19983, unreported.
The state contends that appellant has waived this error for review because she failed to raise the issue in the trial court. In an appropriate case, however, a reviewing court can find plain error when the trial court has failed to appoint a guardian ad litem and such failure results in prejudice to the party in need of a guardian. See In re Wilson (Nov. 12, 1981), Paulding App. No. 11-80-28, unreported at 5. This is just such a case. The record supports and the parties agree that appellant is borderline mentally retarded. As discussed above, it is appellant's mental limitations that CCDCFS claims interferes with her ability to properly parent her children. There can be no better case for prejudice than under the facts of this case.
It was, therefore, error for the trial court to proceed without appointing a guardian ad litem for appellant. Consequently, appellant's second assignment of error is well taken and is sustained. We need not address appellant's first assignment of error. See App.R. 12(A)(1)(c).
To the extent that the trial court's order finds Jayinna and James Jr. to be dependent and grants permanent custody to CCDCFS, that order is vacated. This case is remanded for a new trial upon the appointment of a guardian ad litem for appellant.
This cause is vacated in part and remanded for further proceedings consistent with the opinion herein.
It is, therefore, considered that said appellant recover of said appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J. and PATRICIA A. BLACKMON, J., CONCUR.
 ____________________________________ TIMOTHY E. McMONAGLE, PRESIDING JUDGE