JOURNAL ENTRY AND OPINION
Blondell R. appeals from a judgment of the juvenile court granting permanent custody of her daughter, Shannon R., to the Cuyahoga County Department of Children and Family Services (CCDCFS). On appeal, the mother claims that granting CCDCFS permanent custody is against the manifest weight of the evidence and instead urges that the court should have granted permanent custody to Cheryl Morris, who had been Shannon'sde facto custodian the previous four years. The mother also claims that Shannon expressed the wish to reside with her during an in camera
interview, and because this alleged desire differed from the recommendation of the child's guardian ad litem, the court should have appointed a separate attorney to represent Shannon. After careful review of the record, we have determined that these arguments are without merit. Accordingly, we affirm the judgment of the juvenile court.
The scant record before us reveals that, on March 6, 1991, Blondell R. gave birth to Shannon R. Within six months of her birth, CCDCFS removed Shannon from her mother's custody because of the mother's drug abuse and incarceration; the court then placed Shannon in the legal custody of Jessie Goode.
Goode died in 1996, and Cheryl Morris became Shannon's de facto
custodian. Both the mother and CCDCFS agree that Morris did an admirable job raising Shannon for about four years, from Goode's death until CCDCFS removed her on January 14, 2000.
When the mother got out of prison, CCDCFS established a case plan for her which included random urine screens, a drug and alcohol assessment, and parenting classes; however, she failed to complete any of these requirements.
On January 14, 2000, the court granted CCDCFS's request for the temporary custody of Shannon and appointed Matthew Harris as the child's guardian ad litem. Four days later, the CCDCFS filed a complaint in the juvenile court for the permanent custody of Shannon R.
During the course of proceedings, the mother filed a motion to appoint an attorney for the child, claiming that Shannon had expressed a desire in living with her and arguing that this alleged wish conflicted with the recommendation of the guardian ad litem. At the mother's request, the court conducted an in camera interview of Shannon to determine the child's wishes; however, the court misplaced the tape recording of this hearing.
Matthew Harris, the guardian ad litem, issued a recommendation that the court grant Cheryl Morris legal custody of Shannon and that granting permanent custody to CCDCFS would not be in the child's best interest. However, Morris, who had expressed an interest in adopting Shannon, never filed a motion for legal custody.
On October 2, 2000, the court conducted a dispositional hearing in this matter. Neither the mother nor the alleged father, Marc St. Omer, made an appearance, and their respective attorneys withdrew as counsel.
After hearing from Melisa Hicks, the CCDCFS social worker assigned to Shannon's case, the court ordered Shannon committed to the permanent custody of CCDCFS. From that order, the mother filed a timely appeal with this court. During the pendency of this appeal, the mother requested an extension of time to prepare an App.R. 9(C) statement to supplement the record as to the in camera interview of Shannon; we granted this request, but the mother failed to file a supplemental statement. She now raises two assignments of error for our review. The first one states:
 I. THE JUVENILE COURT'S DECISION TO TERMINATE APPELLANT'S PARENTAL RIGHTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The mother argues that, based on the evidence presented at the dispositional hearing, the court should have granted legal custody of Shannon to Cheryl Morris, the child's de facto custodian. The mother relies on the report of Shannon's guardian ad litem, Matthew Harris, who recommended that the court award Morris legal custody; Harris further opined that granting custody of the Shannon to CCDCFS would not be in the child's best interests.
CCDCFS acknowledges that Morris did an admirable job raising Shannon as her de facto mother but counters that Morris never filed a motion for legal custody; therefore, CCDCFS asserts that the court did not have the statutory authority to award Morris legal custody.
R.C. 2151.353(A)(3) governs the procedure for awarding legal custody. This statute states in pertinent part:
 (A) If a child is adjudicated an abused, neglected or dependant child, the court may make any of the following orders of disposition:
* * *
 (3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child; (Emphasis added.)
We agree with CCDCFS's contention that, because Morris did not file a motion requesting legal custody of Shannon prior to the dispositional hearing, the court lacked statutory authority to grant Morris legal custody.
The facts in the instant case are similar to those recently presented to us in In re Wallace (May 3, 2001), Cuyahoga App. Nos. 78663 and 78664, unreported, wherein we stated:
 No motion for legal custody was filed prior to the dispositional hearing. In fact, the hearsay testimony of the social worker indicated that the grandparents did not want legal custody of the children. As this court noted in In the Matter of Austin Mayle (July 27, 2000), Cuyahoga App. Nos. 76739 and 77165, unreported, a court may not make an award of legal custody without a motion for legal custody filed before the dispositional hearing.
* * *
 Appellant is correct in stating that the court did not have the statutory authority to place the older child in the legal custody of his grandfather without a prior motion for legal custody. This assignment of error is sustained, and the decision regarding the custody of the older boy is reversed for the trial court to make a disposition in accordance with the statute.
Based on the evidence presented at the dispositional hearing, and in conformity with R.C. 2151.353(A) and corresponding case law, the court's decision to grant permanent custody of Shannon to CCDCFS is not against the manifest weight of the evidence. Accordingly, we reject this assignment of error.
 II. THE JUVENILE COURT'S FAILURE TO DETERMINE WHETHER THE WISHES OF SHANNON CONFLICTED WITH HER GUARDIAN AD LITEM'S RECOMMENDATION, AND SUBSEQUENT FAILURE TO APPOINT COUNSEL TO ZEALOUSLY REPRESENT SHANNON, CONSTITUTED A VIOLATION OF THE DUE PROCESS RIGHTS OF SHANNON AND APPELLANT.
The mother also argues that the recommendation of the guardian adlitem, Matthew Harris, conflicted with the expressed wishes of the child, Shannon R., and, therefore, the court should have appointed a separate attorney to represent Shannon's interests. Harris recommended that the court grant legal custody to Shannon's de facto custodian, Cheryl Morris. The mother contends that Shannon expressed an interest in living with her during an in camera interview of the child.
CCDCFS counters that the record available on appeal does not evidence a conflict in this regard; further, it argues that Shannon had actually expressed the desire to remain with Morris. Both parties acknowledge that the court "misplaced" the tape recording of the in camera interview. Therefore, this assignment of error centers around the state of the record and whether we can ascertain if Shannon had proper representation.
Juv.R. 4(A) mandates that every party to juvenile proceedings, including every child, shall have the right to be represented by counsel. Further, Juv.R. 4(C)(1) provides:
 When the guardian ad litem is an attorney admitted to practice in this state, the guardian may also serve as counsel to the ward providing no conflict between the roles exists.
"While Juv.R. 4(C) permits an attorney to serve in the dual capacity of appointed counsel and guardian ad litem, the attorney can only do so as long as there is no conflict between the roles." In re Holmes (Feb. 15, 2001), Cuyahoga App. No. 77785, unreported, citing In re Baby GirlBaxter (1985), 17 Ohio St.3d 229, 232, 479 N.E.2d 257.
Here, there is nothing in the record to support the mother's contention that Shannon expressed an interest in living with her. She argues that Shannon expressed this interest at the in camera interview of the child; however, the juvenile court "misplaced" the tape recording of this hearing, and the mother blames the court for the lack of record as to this issue.
Juv.R. 37(A) states:
 The juvenile court shall make a record of adjudicatory and dispositional proceedings in abuse, neglect, dependent, unruly, and delinquent cases; permanent custody cases; and proceedings before magistrates. In all other proceedings governed by these rules, a record shall be made upon request of a party or upon motion of the court. The record shall be taken in shorthand, stenotype, or by any other adequate mechanical, electronic, or video recording device. (Emphasis added.)
A review of the mother's motion for an in camera interview of Shannon reveals that she did not request that the court make a record of this hearing. Although this court has consistently held that the juvenile court's failure to follow the requirements of Juv.R. 37(A) and make an adequate record mandates reversal, those decisions all involved adjudicatory and dispositional proceedings. See In re Henderson (Mar. 8, 2001), Cuyahoga App. No. 76695, unreported, citing In re Mason (July 13, 2000), Cuyahoga App. No. 76532, unreported, citing In re Collins (1998),127 Ohio App.3d 278, 712 N.E.2d 798; In re Ward (June 12, 1997), Cuyahoga App. No. 71245, unreported; In re Solis (1997),124 Ohio App.3d 547, 706 N.E.2d 839; In re McAlpine (Dec. 3, 1998), Cuyahoga App. No. 74256, unreported; In re Goff (June 17, 1999), Cuyahoga App. No. 75328, unreported.
Here, the in camera interview falls in the category of "all other proceedings." Further, in the instant appeal, the mother filed a motion for extension of time to prepare an App.R. 9(C) statement to supplement the record of the in camera interview of Shannon; we granted this motion, but she never filed an App.R. 9(C) statement.
These facts are analogous to those recently presented to us in In reSatterwhite (Aug. 23, 2001), Cuyahoga App. No. 77071, unreported, wherein the court stated:
 While Mr. Lykes complains that the CCDCFS failed to present clear and convincing evidence to support an award of permanent custody, he presents us with an incomplete transcript on appeal. The portion missing from the transcript is Mr. Lykes' own testimony. Mr. Lykes was permitted leave to complete the record by virtue of an App.R. 9(C) statement and failed to do so. He has apparently neglected to notify and/or keep his counsel advised of his whereabouts which remain unknown. While Mr. Lykes presumably had no involvement in the disappearance of his testimony from the record, he bears some fault for failing to avail himself of the alternative means of completing the record. * * * (Emphasis added.)
Like the situation in Satterwhite, the mother in the case sub judice
had ample opportunity to file an App.R. 9(C) statement with our court to support her allegation that Shannon expressed a desire to live with her in the in camera interview, but she failed to submit such a statement. Therefore, the mother bears some fault in our inability to review the record as to this issue.
We adhere to our decision in Satterwhite and conclude that, because the mother failed to file the App.R. 9(C) statement in this case after obtaining leave to do so, and because she failed to request the juvenile court to make a record of the in camera interview, we are unable to review this issue. Accordingly, we reject this assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J. and JAMES J. SWEENEY, J. CONCUR.