OPINION
{¶ 1} Dianne Liles is appealing from a decision of the Probate Court denying her petition to adopt her two grandchildren, a boy and a girl who will be identified only by their initials in this appeal and in the separate appeal denying her petition to adopt G.R.L.
 {¶ 2} Separate petitions were filed for the adoption of the two children and they were given separate case numbers, but both petitions were considered by the court in a single hearing which was extensive and presented the testimony of eight witnesses, including the appellant and the non-consenting mother [Tammy] of the two children. The Probate Court ruled on both cases in a single entry, as follows:
 {¶ 3} "This cause came before the Court for hearing on January 28, 2003, on the Petitions for Adoption of Minor, filed on September 20, 2002, and on the Objections to Petition for Adoption, filed November 12, 2002, through counsel.
 {¶ 4} "The Court, after reviewing the testimony and evidence presented, hereby finds that the Natural Mother was denied visitation to see her children by the Petitioner, and that although she did work during a portion of the one-year period preceding the filing the Petitions for Adoption, the amount of income earned was minimal. The natural mother testified she did purchase clothing items for the minor children, but was unable to deliver them to the children.
 {¶ 5} "Therefore, the Court finds that the consent of the natural mother is necessary and the Petitions for Adoption are hereby dismissed."
 {¶ 6} This brief conclusory decision can in part be explained perhaps by the statement of the Probate Court at the conclusion of the hearing that "I'll get you out a decision real soon because I don't have much more time." (Tr. 88). The Probate Court was referring to the fact that he was leaving office in a matter of days. The first numbered appeal is for the child A.P.L. and our decision here will govern the second appeal, that of the matter of the adoption of G.R.L.
 {¶ 7} The Probate Court found that the non-consenting mother was denied visitation to see her children and the amount of income she earned during the year preceding the petitions for adoption filing date was "minimal." R.C. 3107.07(A) provides that consent to adoption is not required of "A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of petitioner." Legal custody had been awarded to the appellant of both children on January 13, 2000, in an agreed entry which included both precise times for visitation by the mother and also an order that the mother shall pay support through the Miami County Child Support Enforcement Agency in the amount of $164.35 for each child, per month, plus 2% poundage for a total of $328.71, per month, plus poundage.
 {¶ 8} Both petitions for adoption alleged that the consent of the mother is not required because she failed to provide the support set forth in the agreed entry for a period of one year preceding the filing of the petitions for adoption. A lack of visitation is not alleged as a reason for the mother's consent not being required, but the Probate Court addressed that issue anyway. It has not been raised on appeal, however, but we will necessarily address it in our discussion of the only ground raised on appeal, that is, whether the natural mother was justified in not providing the support required by the agreed entry.
 {¶ 9} In addressing this appeal, we are governed by the relevant decisions of the Supreme Court of Ohio that are set forth in the case Inre Adoption of Masa (1986), 23 Ohio St.3d 163. The court there held that "[t]he question of whether justifiable cause for failure to pay child support has been proven by clear and convincing evidence in a particular case is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." (Citation omitted.) Id. at paragraph two of the syllabus. The court there further held that "[p]ursuant to R.C. 3107.07(A), the petitioner for adoption has the burden of proving, by clear and convincing evidence, that the natural parent has failed to support the child for a requisite one-year period, and that this failure was without justifiable cause." (Citation omitted.) Id. at paragraph one of the syllabus.
 {¶ 10} In Masa, the sole question before the court was whether a father had justifiable cause for his failure to support his daughter. The court then stated:
 {¶ 11} "Our analysis must begin with the recognition that the right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law. Santosky v. Kramer (1982),455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599; In re Baby GirlBaxter (1985), 17 Ohio St.3d 229, 479 N.E.2d 257, Celebrezze, C.J., concurring at 235, 479 N.E.2d 257. Adoption terminates those fundamental rights. R.C. 3107.15(A)(1). For this reason, we have held that ` * * * [a]ny exception to the requirement of parental consent [to adoption] must be strictly construed so as to protect the right of natural parents to raise and nurture their children.' In re Schoeppner (1976),46 Ohio St.2d 21, 24, 345 N.E.2d 608 [75 O.O.2d 12]."
 {¶ 12} In the hearing, the non-consenting mother presented her own testimony and that of three other witnesses that Tammy (the natural mother), attempted on many occasions to visit her children in the appellant's house, but repeatedly the appellant "slammed the door in Tammy's face quite a few times." (Tr. 5-6). And that Tammy was never given the opportunity to give the gifts to the children that she had brought with her of toys and clothes and other things. Furthermore, there is testimony on record that the appellant told Tammy "I don't want any money. I don't want any child support." (Tr. 8-9). There is even testimony by a witness unrelated to Tammy that during one of the visits the children "were at the door and at the window saying, `Mommy, mommy.'" (Tr. 21, 48). These allegations were denied by the appellant. (Tr. 70, 72). On at least two occasions when Tammy was denied visitation, she called the police and the appellant acknowledged that she refused visitation even when the police were there at the door because "we were in a court situation over the visitation." (Tr. 74). The following exchange from the transcript of the hearing is revealing.
 {¶ 13} "A. [By the appellant] What I've told the police, sir, is that she [Tammy] has not exercised her visitation rights. She shows up any time, you know, after having not been around. My personal feeling is the children hadn't seen her in over two years, that I was protecting them. I was taking care of them. They don't know her. It was like sending them out the door with a stranger.
 {¶ 14} "Q. Even in August of `01 you refused the visitation?
 {¶ 15} "A. That was pretty much the same situation then.
 {¶ 16} "Q. All right. You heard Miss Liles, Tammy's mother, testify that she was present when you said `I don't want your money. I don't need your child support.' You say that she's lying to this Court?
 {¶ 17} "A. Yes, I do. Uh-huh.
 {¶ 18} "Q. You've heard William Stewart, Kathy, Lisa, Dave, Dwaine, all testify they accompanied her during this one-year period prior to filing the Petition for Adoption saying you simply refused visitation.
 {¶ 19} "A. That's a lie." (Tr. 75-76).
 {¶ 20} It is obvious that the Probate Court was faced with a credibility decision in view of the starkly conflicting testimony regarding both visitation and support. It is also obvious that the Probate Court chose to credit the testimony of Tammy and her six witnesses over that of the petitioner-appellant. It is universally recognized that credibility is for the trier of the facts and no citation of authorities is necessary here to support that axiom.
 {¶ 21} The testimony about the non-consenting mother's income, which is not controverted, is she was earning some part-time money from delivering pizzas which amounted to a total of $2,910.96 from February, 2002, through September, 2002. In addition, she received some public welfare and was assisted both financially and in living arrangements by relatives. Even delivering pizzas, she had to use her own car and pay her own automobile expenses, including gasoline. (Tr. 29). Tammy acknowledged that she has support arrearage of over $10, 000, but claims that she just can't afford to pay it. (Tr. 53). The lack of ability to provide support has been held as justification for not providing it. In re Adoption ofRiegle, Hancock App. No. CA5-01-37, 2002-Ohio-694; In re Masa, supra.
 {¶ 22} After reading the entire transcript of the hearing and applying the applicable case law, we find that the appellant failed to prove by clear and convincing evidence that the failure of Tammy, the non-consenting parent, to pay support was without justifiable cause. Furthermore, we cannot find that the decision of the Probate Court that Tammy had justifiable cause to not pay support is against the manifest weight of the evidence. Finally, we are mindful of the admonition by the Supreme Court to strictly construe any exception to the right of parental consent to adoption. Masa, supra.
 {¶ 23} The assignments of error are overruled, and the judgment is affirmed.
BROGAN, J. and GRADY, J., concur.