OPINION
This appeal is taken from a final judgment of the Juvenile Division of the Geauga County Court of Common Pleas. Appellant, Charlotte Graves, appeals from the juvenile court's decision awarding temporary custody of her minor daughter to appellee, the Geauga County Department of Human Services ("DHS").
Appellant is the natural mother of Bradley Graves ("Bradley") and Colleen Graves ("Colleen"), born on February 2, 1981, and on December 6, 1982, respectively. On November 24, 1998, a representative of DHS filed a dependency complaint in the juvenile court pursuant to R.C. 2151.04 and R.C. 2151.27. As grounds for the complaint, DHS stated that appellant was suffering from mental health problems which caused her to behave in a manner detrimental to the children's well-being. In addition, it was alleged that appellant failed to address sexual abuse allegations concerning the children.
Upon motion of DHS, the juvenile court immediately issued anex parte temporary order pursuant to R.C. 2151.33 stating it would be contrary to Colleen's best interest and welfare to continue residing at home with her mother. As a result, the juvenile court granted emergency temporary custody of Colleen to Steve and Joyce Wydinski, with DHS exercising protective supervision over the child. Appellant was accorded the right to supervised visitation with her daughter pending the outcome of the adjudicatory hearing. The juvenile court thereafter appointed a guardian ad litem to represent Bradley and Colleen.
The matter came on for a preadjudicatory hearing on November 25, 1998, to review the issuance of the ex parte order. Appellant attended the hearing and was represented by counsel. At this proceeding, the juvenile court read the allegations contained in the complaint, explained what DHS would have to prove in order to sustain such allegations, and discussed the potential ramifications should the complaint be found true. Appellant indicated that she understood the nature of the complaint and the procedural formalities which would ensue. The juvenile court also found that it was in the best interest of Bradley and Colleen for its prior orders to remain in continuing effect.
The case came on for another hearing on December 17, 1998. Again, appellant was present with her counsel. Following this proceeding, the juvenile court ordered that appellant was entitled to a minimum of two hours of supervised visitation with Colleen per week. The supervision was to be carried out by a representative of DHS or, alternatively, by the guardian ad litem
upon the approval of DHS.
Subsequently, however, DHS filed a motion to suspend the visitation on December 30, 1998. As grounds for the motion, DHS asserted that Colleen's counselor had recommended that visitation with appellant be suspended because the child was being traumatized by the visits. In addition, DHS indicated that the guardian ad litem had reported that appellant was engaging in inappropriate behavior during visitation with her daughter. Upon consideration, the juvenile court granted the motion to suspend visitation.
The adjudicatory hearing commenced on January 25, 1999. At the start of the second day of the proceedings, however, the parties reached a resolution by which appellant agreed to enter a plea of true to an amended complaint. The complaint as amended stated that Colleen was dependent because she suffered from certain mental health problems caused by different sources which needed to be addressed. By judgment entry on January 29, 1999, the juvenile court adjudicated Colleen to be a dependent child pursuant to R.C. 2151.04. Upon motion of DHS, the allegation of dependency relating to Bradley was dismissed. The juvenile court further ordered that Colleen remain in the temporary custody of the Wydinskis subject to the protective supervision of DHS.
The dispositional hearing was conducted on February 17, 1999. All of the parties involved had the opportunity to call witnesses and present evidence.
Ruth Becker ("Becker"), a DHS case worker, testified at this proceeding. Becker described the initial DHS investigation that preceded the filing of the dependency complaint. She testified that a DHS investigator and assessment worker interviewed appellant, Bradley, and Colleen. Based on these interviews, it was determined that appellant regularly exhibited paranoid behavior due to her belief that someone was following or watching her. The paranoia manifested itself in different ways, including instances in which appellant made one or both children sample her food first out of fear that someone was attempting to poison her.
Becker also reviewed the allegations of sexual abuse during the dispositional hearing. According to Becker, Colleen reported to DHS that she had been molested starting at age four by her maternal grandfather. In addition, Colleen claimed to have been raped on multiple occasions by Bradley, thereby necessitating that the siblings be kept apart from each other while the matter was investigated.
Finally, Becker testified as to Colleen's fragile emotional condition. Becker indicated that Colleen was experiencing depression and post-traumatic stress symptoms and that the child often became anxious and distraught when forced to visit with appellant. Becker concluded her testimony by recommending that DHS be given temporary custody of Colleen. She expressed the view that family reunification might be possible in the future if Colleen were helped by therapy and if appellant underwent a psychological evaluation and followed through with after-care recommendations.
The guardian ad litem also testified during the dispositional proceeding. It was the guardian who supervised the initial visitation between appellant and Colleen in late 1998. She described how Colleen would often become upset and cry during the visits with appellant. The guardian further testified that appellant attempted to thwart the supervision by refusing to allow her to sit close to Colleen during the visits and by whispering things into Colleen's ear in order to prevent the guardian from hearing what was being said.
Several other witnesses testified during the course of the dispositional hearing. These witnesses included Bradley, Colleen's older sister, and Steve Wydinski. Appellant, however, did not testify.
Thereafter, on February 19, 1999, the juvenile court issued its judgment ordering that DHS be granted temporary custody of Colleen. In addition, the juvenile court decreed that appellant and Bradley could have no contact whatsoever with Colleen, unless otherwise recommended by Colleen's counselors in the future. Finally, the juvenile court ruled that a case plan which had previously been submitted by DHS was adopted as an order of the court, journalized, and made binding upon the parties.
From this judgment, appellant filed a timely notice of appeal with this court. She now asserts the following assignments of error:
 "[1.] The trial court erred in implementing a case plan which was not yet filed with the court."
 "[2.] The trial court erred in failing to recognize that the best interest of the child is home placement."
 "[3.] Appellant was significantly harmed by the ineffective assistance of counsel."
 "[4.] The trial court erred in ordering appellant to undergo psychological testing despite the fact that it would be. [sic] contrary to her religious beliefs to do so."
 "[5.] The trial court erred in not allowing visitation with the parent."
 "[6.] The trial court erred by continually allowing triple hearsay evidence to be submitted during the dispositional hearing."
 "[7.] The trial court erred in granting the Geauga County Department of Human Services custody after they had demonstrated bad faith by stopping visitations which had been court ordered."
 "[8.] The trial court erred in by [sic] unlawfully delegating to a social worker the ability to set standards for visitation."
 "[9.] The trial court erred in failing to place the dependent child with a family member as their first priority."
 "[10.] The trial court erred in removing the child from her home and/or continuing the removal from her home without determining whether the Geauga County Department of Human Services made reasonable efforts to prevent the removal, eliminate the continued removal, or to make it possible for the child to return home."
 I.
In her first assignment of error, appellant claims that the trial court erred by adopting a case plan which was not actually filed by DHS until after the dispositional hearing. Appellant suggests that this amounted to a clear contravention of the law in Ohio.
In this regard, R.C. 2151.412(C) reads:
 "(C) Each public children services agency and private child placing agency that is required by division (A) of this section to maintain a case plan shall file the case plan with the court prior to the child's adjudicatory hearing but no later than thirty days after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care. If the agency does not have sufficient information prior to the adjudicatory hearing to complete any part of the case plan, the agency shall specify in the case plan the additional information necessary to complete each part of the case plan and the steps that will be taken to obtain that information. All parts of the case plan shall be completed by the earlier of thirty days after the adjudicatory hearing or the date of the dispositional hearing for the child." (Emphasis added.) See, also, Juv.R. 34(F) (stating the same requirement).
 As a general matter, therefore, appellant is correct in asserting that a public children services agency must file its case plan with the juvenile court prior to the child's adjudicatory hearing, but no later than thirty days after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care. Any additional information necessary to complete the case plan must be timely obtained, and the finalized plan must be completed by the earlier of thirty days after the adjudicatory hearing or the date of the dispositional hearing for the child.
In the case at bar, appellant's assertion that DHS failed to file a timely case plan is simply incorrect. The record contains a preliminary case plan which DHS filed with the juvenile court on December 18, 1998. This was prior to the adjudicatory hearing which commenced on January 25, 1999, and well-within thirty days of the date on which the dependency complaint was filed on November 24, 1999.
In its dispositional order, the juvenile court adopted the original case plan submitted by DHS with two additional requirements, to wit: that law enforcement officials investigate the allegations of sexual abuse raised during the proceedings and that the Graves family implement a safety protocol based on the results of such investigation. Given that the juvenile court ordered the incorporation of these two requirements, DHS filed an amended case plan on March 5, 1999.
It is apparent that appellant is mistakenly referring to the March 5, 1999 document as support for her position that DHS filed the mandatory case plan following the dispositional hearing. As explained, however, this was simply an amended version of the original case plan that had been filed in a timely fashion by DHS on December 18, 1998.
Hence, appellant's suggestion that DHS did not file a case plan with the juvenile court until after the dispositional hearing is baseless. The record clearly demonstrates otherwise. The first assignment lacks merit.
 II.
In her second assignment of error, appellant proposes that the juvenile court erred in failing to recognize that the best interest of Colleen would have been furthered by home placement. Appellant's position in this regard is unfounded. It must be remembered that appellant pled true to the amended complaint, thereby in effect conceding the truth of the allegation that Colleen suffered from various mental health problems which were exacerbated while the child lived at home. The plea also constituted an admission that Colleen's emotional difficulties were triggered by multiple sources, including appellant's own unstable behavior.
By pleading true to the complaint during the adjudicatory hearing, appellant acknowledged that Colleen was a dependent child as defined in R.C. 2151.04. Having adjudicated her to be a dependent child, the juvenile court properly proceeded to a dispositional hearing. Based on the evidence adduced at the dispositional hearing, the juvenile court opted to place Colleen in the temporary custody of DHS.
R.C. 2151.353(A) provides in relevant part:
 "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 * * * (2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified family foster home or in any other home approved by the court [.]" (Emphasis added.) See, also, Juv.R. 34(D) (providing for the same dispositional orders).
 Thus, the dispositional option chosen by the juvenile court is expressly provided for by statute. Moreover, R.C. 2151.353 does not mandate that the dispositional alternatives listed therein be applied in any preferential order. Rather, the decision as to which disposition is in the best interests of the abused, neglected, or dependent child is left to the discretion of the juvenile court.
In the case sub judice, the juvenile court certainly did not abuse its discretion in invoking R.C. 2151.353(A)(2) to place Colleen in the temporary custody of DHS. The adjudication of Colleen as a dependent child was premised on the fact that she suffers from significant mental health difficulties which were inadequately addressed by appellant. Indeed, Colleen's difficulties were actually being exacerbated by residing in a dysfunctional home with her mother. The juvenile court did not abuse its discretion by granting temporary custody of Colleen to DHS. The second assignment is not well-taken.
 III.
In her third assignment of error, appellant posits that she was deprived of the effective assistance of counsel. Appellant claims that the alleged inefficacy of her counsel resulted in the juvenile court's order that Colleen be placed in the temporary custody of DHS.
There is a right to counsel in juvenile court proceedings. This right is recognized in the Revised Code and in the Ohio Rules of Juvenile Procedure. R.C. 2151.352 states in part:
 "A child, his parents, custodian, or other person in loco parentis of such child is entitled to representation by legal counsel at all stages of the proceedings and if, as an indigent person, he is unable to employ counsel, to have counsel provided for him * * *."
 Beyond the express statutory language, Juv.R. 4(A) reads in part:
 "Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding."
 In the present case, appellant was a party to the juvenile court proceeding. See Juv.R. 2(X) (defining "party" to include, inter alia, the child who is the subject of the juvenile court proceeding and the child's parent or parents). Thus, appellant had the right to counsel under Juv.R. 4(A) as well.
The right to counsel in juvenile court proceedings includes the right to the effective assistance of such counsel. See Kurtz Giannelli, Ohio Juvenile Law (1999 Ed.), Section 20.5, at 224. The applicable test for whether counsel was ineffective is the same analysis that governs the right to counsel in criminal proceedings as guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.
In order to demonstrate ineffective assistance of trial counsel, the United States Supreme Court in Strickland v.Washington (1984), 466 U.S. 668, formulated a two-part test. First, the defendant must show that counsel's performance was deficient in that the representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-688. Second, it must be shown that counsel's deficient performance prejudiced the defendant. Id. at 687. In this context, prejudice means that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. Id. at 694.
The Supreme Court of Ohio has endorsed the Strickland test. See, e.g., State v. Bradley (1989), 42 Ohio St.3d 136, 141-142. This court has likewise embraced the Strickland standard for determining the issue of ineffective assistance of counsel. See,e.g., State v. Hayes (Sept. 30, 1999), Ashtabula App. No. 97-A-0067, unreported, at 6, 1999 WL 959831; State v. Patterson
(May 22, 1998), Trumbull App. No. 96-T-5439, unreported, at 7, 1998 WL 310737.
In the present case, appellant was represented at all times by private counsel. On appeal, appellant now suggests that her counsel was ineffective for a variety of reasons, including the following: (1) counsel did not present enough evidence tending to support home placement as the appropriate dispositional alternative; (2) counsel failed to inform appellant as to the meaning of "dependency" before appellant pled true to the amended complaint, thereby resulting in the juvenile court's adjudication of Colleen as a dependent child; and (3) counsel failed to turn over the case file to appellant's new appellate attorney.
The transcript of the dispositional hearing reveals that counsel did urge the juvenile court to return Colleen to her mother's home. As discussed in the first assignment of error, the evidence contra to home placement was compelling. Appellant fails to demonstrate either by suggestion or through the record what favorable evidence existed which was not presented by counsel. She, therefore, can not establish the second prong of theStrickland test, to wit: that the juvenile court would not have granted temporary custody of Colleen to DHS absent any alleged inefficacy on the part of her counsel.
As for appellant's contention that counsel failed to inform her of the meaning of "dependency," there is absolutely nothing of record to substantiate this beyond the mere assertion in appellant's brief. What the record does reflect is that appellant and her counsel attended a preadjudicatory hearing on November 25, 1998. During the course of this proceeding, the juvenile court reviewed the allegations contained in the complaint, what DHS needed to prove in order to demonstrate that Colleen was a dependent child, and the potential consequences should the complaint be found true. The juvenile court's judgment entry memorializing this hearing stated that "Charlotte Graves indicated an understanding of the complaint and the procedural aspects involved."
Moreover, Juv.R. 29(B)(2) requires that at the beginning of the adjudicatory hearing, the juvenile court must "[i]nform the parties of the substance of the complaint, the purpose of the hearing, and possible consequences of the hearing * * *." The parties did not file a transcript of the adjudicatory hearing held on January 25 and 26, 1999. In the absence of a transcript, "the reviewing court ordinarily assumes the regularity of the proceedings below." State v. Boughner (Dec. 17, 1999), Geauga App. No. 98-G-2161, unreported, at 6, 1999 WL 1297606. Thus, we presume that the juvenile court again informed appellant regarding the meaning of "dependency" at the outset of the adjudicatory hearing per Juv.R. 29(B)(2).
Finally, the assertion that appellant's trial counsel did not turn over his case file to her appellate attorney following the dispositional hearing is irrelevant as it is not a basis upon which a finding of ineffective assistance of counsel can be predicated. Appellant's claim of ineffective assistance of counsel hinges upon the litigation leading up to and including the dispositional hearing which resulted in the juvenile court's judgment granting temporary custody of Colleen to DHS. Whether trial counsel subsequently turned over the case file that he compiled to appellate counsel is unrelated to the question of whether trial counsel was previously ineffective in rendering representation to appellant.
Appellant was not deprived of the effective assistance of counsel. The third assignment is without merit.
 IV.
In her fourth assignment of error, appellant suggests that the juvenile court erred by ordering her to undergo psychiatric testing and/or psychological counseling, despite the fact that such practices run counter to her religious beliefs. Appellant states that she is a fundamentalist Christian and that the fields of psychiatry and psychology are contrary to the word of God.
According to appellant, the juvenile court's decision awarding temporary custody of Colleen to DHS clearly evidences the requirement that she obtain psychiatric testing and/or psychological counseling before she can be reunited with her daughter. Appellant implies that such an order constitutes a violation of the Free Exercise Clause of the First Amendment to the United States Constitution because it compels her to submit to such testing and/or counseling in direct derogation of her religious beliefs.
The record does not reflect that this issue was presented to the trial court in a timely manner. Appellant did not testify at the dispositional hearing and, therefore, failed to provide any evidence as to the exact nature of her religious beliefs. There was some suggestion that appellant thought of calling her pastor as a witness during the dispositional hearing. Ultimately, however, the pastor neither attended the proceeding nor testified on appellant's behalf. Thus, there was no evidence in the record to substantiate appellant's claim that psychiatric testing and/or psychological counseling is contrary to her religious beliefs.
Furthermore, a review of the record reveals that Section 2 of the amended case plan filed by DHS requires the following:
 "Charlotte will obtain a psychiatric evaluation, within 45 days of disposition, by a psychiatrist approved by DHS, and follow all recommendations of psychiatrist. Charlotte will attend counseling twice a month unless otherwise recommended by counselor. Charlotte will sign a release of information, so that the social worker may contact the psychiatrist regarding assessment, recommendations, progress and attendance."
 Thus, the amended case plan case does contain a stated goal that appellant address her mental health issues by undergoing a psychiatric evaluation and by following all recommendations deriving from such evaluation, including attending counseling sessions as necessary. As stated previously, the juvenile court expressly decreed that the case plan, as modified by DHS following the dispositional hearing, be adopted as an order of the court.
Upon review, we are unable to discern any merit in appellant's argument that the decision of the juvenile court ordering her to undergo psychiatric testing and/or psychological counseling unconstitutionally infringes on her freedom of religion as protected by the First Amendment. Appellant fails to cite any case law or other relevant authority in support of her position that this amounts to a constitutional violation. Rather, she simply offers statements to the effect that the juvenile court's order "creates a King Solomon like situation where Appellant must choose between bing [sic] reunited with her daughter or obeying the Word of God." Absent any citation to relevant constitutional or other legal authority, we decline to hold that appellant's right to the free exercise of her religion has been unconstitutionally impinged upon.
In light of the foregoing, we need not engage in a substantive analysis of appellant's First Amendment freedom of religion claim. The fourth assignment is not well-taken.
 V.
In her fifth assignment of error, appellant contends that the juvenile court erred by not allowing for visitation with Colleen when issuing the dispositional order. According to appellant, the juvenile court's decision prohibiting visitation with her daughter violated not only Ohio law, but a "basic tenant of human decency."
As described earlier, the juvenile court originally issued anex parte temporary order when the dependency complaint was filed by DHS on November 24, 1998. In this order, the juvenile court granted appellant the right to supervised visitation with her daughter pending the outcome of the adjudicatory hearing. Subsequent to the hearing on December 17, 1998, the juvenile court issued a new order in which it reaffirmed that appellant was entitled to a minimum of two hours of supervised weekly visitation with Colleen. The guardian ad litem was authorized by DHS to supervise these visits.
Shortly thereafter, however, DHS moved to suspend the visitation on the grounds that Colleen was being traumatized by the visits and that appellant was engaging in inappropriate behavior as reported by the guardian ad litem. The juvenile court granted the motion.
The suspension of visitation remained in place through the adjudicatory and dispositional hearings. Following the latter proceeding, the juvenile court entered its dispositional order on February 19, 1999. This order contained language not only disallowing visitation, but barring any contact between appellant and Colleen:
 "* * * Charlotte Graves and Bradley Graves shall have no contact whatsoever with Colleen Graves unless recommended otherwise by all of the counselors; in addition, Charlotte Graves and Bradley Graves shall remain at a distance of at least~ mile away from Colleen Graves at all times."
 On appeal, appellant takes exception to this aspect of the dispositional order. Again, however, appellant cites no authority to support her position that she should have been permitted visitation with Colleen. Rather, appellant simply argues that the evidence did not warrant this outcome.
As an initial matter, we would note that the juvenile court was well-within its authority to preclude visitation between appellant and Colleen. R.C. 2151.33 expressly authorized the predispositional suspension of the supervised visitation. This statute reads in part:
 "(B)(1) After a complaint, petition, writ, or other document initiating a case dealing with an alleged or adjudicated abused, neglected, or dependent child is filed and upon the filing or making of a motion pursuant to division (C) of this section, the court, prior to the final disposition of the case, may issue any of the following temporary orders to protect the best interest of the child:
 * * * (c) An order granting, limiting, or eliminating visitation rights with respect to the child[.]" See, also, Juv.R. 13(B)(2)(c) (granting the juvenile court the same authority with respect to visitation rights).
 The juvenile court retains the authority to grant, limit, or eliminate visitation rights with respect to a child when crafting the final disposition of a case. In doing so, the juvenile court must be guided by what level of visitation, or bar thereto, is necessary to protect the best interest of the child.
In the instant matter, the juvenile court decided to extend its prior predispositional order suspending visitation between appellant and Colleen. Notwithstanding appellant's suggestion to the contrary, the record supports the juvenile court's decision as being in the best interest of Colleen.
This evidence included the testimony of the guardian adlitem. She described the nature of the supervised visits between appellant and Colleen which took place prior to the suspension of such visitation. The guardian testified that Colleen exhibited apprehension before visits with appellant occurred and that the child often became visibly upset, to the point of crying, during the course of such visits. In addition, appellant was uncooperative in terms of allowing the guardian to exercise proper supervision over the visits. The guardian indicated that appellant oftentimes whispered things into Colleen's ear which appeared to upset the child, but appellant would not allow the guardian to sit next to Colleen in order to prevent such whispering.
The juvenile court determined that it was in Colleen's best interest to bar appellant from having any contact with her daughter, including supervised visitation, until the relevant psychologists who were counseling Colleen recommended otherwise. Based upon the evidence adduced during the dispositional hearing, we do not believe that the juvenile court's judgment in this regard was in error. The fifth assignment is meritless.
 VI.
In her sixth assignment of error, appellant maintains that the juvenile court erred by allowing certain hearsay testimony to be admitted into evidence during the course of the dispositional proceeding. Specifically, appellant is heard to complain about the testimony of Becker, the DHS case worker who testified during the dispositional hearing. Becker testified about a social history of the Graves family that had been prepared by Meredith Myers ("Myers"), a colleague of Becker's who also works for DHS. In doing so, Becker related various observations that Myers had recorded during conversations that her co-worker had with Colleen.
According to appellant, Becker would have been permitted to testify about events which she did not witness directly pursuant to the hearsay exception contained in Juv.R. 34(B)(2), but only if Becker learned of such information from Colleen herself. In other words, appellant claims that Becker should not have been allowed to recount information about the Graves family that she gleaned from an intermediary, such as Myers. Because Becker did not author the social history, appellant claims that this line of testimony is "triple hearsay" and argues that Juv.R. 34(B)(2) only allows regular garden-variety hearsay, as opposed to double or triple hearsay.
Juv.R. 32(A) specifically authorizes the preparation of a social history:
 "The court may order and utilize a social history or physical or mental examination at any time after the filing of a complaint under any of the following circumstances:
 * * * (3) Where a material allegation of a neglect, dependency, or abused child complaint relates to matters that a history or examination may clarify[.]"
 The question presented is whether a non-author of the social history could testify regarding the substantive content of that history. As a general matter, the Ohio Rules of Evidence apply to juvenile court proceedings. See Evid.R. 101(A). Notwithstanding this general rule, however, the applicability of the Rules of Evidence is somewhat limited during the dispositional stage of a juvenile court case. Evid.R. 101(C) provides that the evidence rules do not apply in certain situations, including "[p]roceedings in which other rules prescribed by the Supreme Court govern matters relating to evidence." Evid.R. 101(C)(6).
In juvenile court proceedings, the Supreme Court of Ohio has promulgated various other evidentiary rules. One such rule is Juv.R. 34(B)(2) governing the procedure to be employed during a dispositional hearing. It reads:
"(B) Hearing procedure"
 "The hearing shall be conducted in the following manner:
 * * * (2) Except as provided in division (I) of this rule, the court may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence[.]" (Emphasis added.) See, also, R.C. 2151.35(B)(2) (stating the same exception allowing hearsay to be admitted at a dispositional hearing if it is material and relevant).
 Juv.R. 34(B)(2) and R.C. 2151.35(B)(2), therefore, expressly permit the introduction of hearsay evidence during a dispositional hearing. We do not believe that the term "hearsay" should be so narrowly construed as to preclude the possibility that double hearsay could be admissible within the juvenile court's discretion. As the Supreme Court of Ohio has observed:
 "The issue at the adjudicatory stage of a dependency case is whether petitioner has proven, by clear and convincing evidence, that the child is in fact dependent. The issue at the dispositional stage involves a determination of what is in the child's best interests. There must be strict adherence to the Rules of Evidence at the adjudicatory stage. Yet, `any evidence that is material and relevant, including hearsay, opinion and documentary evidence,' is admissible at the dispositional stage." (Emphasis added.) In re Baby Girl Baxter (1985), 17 Ohio St.3d 229, 233, quoting Juv.R. 34(B)(2).
 Even in light of the general prohibition against the use of hearsay evidence at the adjudicatory stage of the proceedings, an exception may be made when a social history is simply used to clarify allegations contained in the complaint, rather than as proof of the allegations in the complaint. Davis v. Trumbull Cty. Children Serv. Bd. (1985), 24 Ohio App.3d 180. Moreover, even if the degree to which hearsay evidence contained in a social history may be used as evidence going to the truth of the complaint is a subject of contention, there is no doubt that Juv.R. 34(B)(2) and R.C. 2151.35(B)(2) specifically allow such evidence to be admitted during a dispositional hearing at the discretion of the juvenile court.
In the instant case, the compelling fact is that appellant pled true to the dependency complaint. That plea terminated the adjudicatory proceeding which had been in progress. As observed by the Eighth District Court of Appeals, where a mother stipulates that the allegations in a dependency complaint are true, the juvenile court may reach its finding of dependency based upon the stipulation as there is "no need for evidence of dependency given the stipulation of same." In re Ware (July 17, 1980), Cuyahoga App. No. 40983, unreported, at 9, 1980 Ohio App. LEXIS 14394. The testimony of which appellant now complains was given by Becker at the subsequent dispositional hearing. Thus, it was not relevant to the already established finding of dependency.
If Becker's testimony had been offered at the adjudicatory hearing, our analysis of its admissibility would quite likely have been different. In the present case, however, there was a plea of true entered which resulted in the adjudication of dependency. The circumstances of the dispositional hearing do not indicate an abuse of discretion in the trial court's admission of the disputed testimony offered by Becker. This was permissible hearsay pursuant to Juv.R. 34(B)(2) and R.C. 2151.35(B)(2). The sixth assignment is not well-founded.
 VII.
In her seventh assignment of error, appellant asserts that the juvenile court erred in granting temporary custody of Colleen to DHS when the agency demonstrated bad faith in stopping previously ordered visitation. The entire extent of the argumentation put forth in appellant's brief in support of this proposed error is as follows:
 "It is against logic that the court should grant a judgement to a party who has repeatedly and willfully violated the order of the court. That is exactly what has occurred in this case. The Department of Human Services has repeatedly cut short, and then cut off, visitations between the mother and the daughter in this case. There is no logical reason for this conduct, and even less to grant temporary custody to a party who has demonstrated its willful disobedience to the court."
 This argument has absolutely no foundational basis in the record. Consequently, appellant should not have wasted this court's time by assigning it as error.
As recounted previously, DHS filed a motion on December 30, 1998 to suspend the court-ordered supervised visitation between appellant and Colleen. Along with the motion, DHS submitted a letter from Colleen's counselor in which the counselor stated her professional recommendation that the visitation be suspended because the juvenile was experiencing extreme anxiety both prior to and after the visits. By judgment entry dated December 31, 1998, the juvenile court granted the motion after reviewing the report submitted by Colleen's counselor.
Hence, the record clearly reflects that DHS "cut off" visitation between appellant and her daughter only after the agency filed a proper motion pursuant to Juv.R. 13(B)(2)(c) and R.C. 2151.33(B)(1)(c) which was granted by the juvenile court. DHS did not repeatedly and willfully violate any order of the juvenile court relating to visitation. The seventh assignment is utterly without merit.
 VIII.
In her eighth assignment of error, appellant suggests that the juvenile court erred by delegating to a "social worker" the decision as to whether or not visitation will be reinstated in the future. Specifically, appellant alludes to the following previously excerpted language from the dispositional order:
 "* * * Charlotte Graves and Bradley Graves shall have no contact whatsoever with Colleen Graves unless recommended otherwise by all of the counselors[.]" (Emphasis added.)
 Appellant argues that the juvenile court shirked its responsibility by delegating the question of whether visitation will resume in the future to the psychologists who are counseling appellant and Colleen pursuant to the DHS case plan. Although appellant intimates that the juvenile court's decision in this regard was unlawful, she cites no statutory or case law in support of her position.
Upon review, it is apparent that the juvenile court did not actually delegate ultimate decision-making authority over the issue of visitation to any mental health professional. Rather, the juvenile court's reference to the recommendations of counselors was simply a means of conveying to the parties that the court could revisit the issue of visitation in the future. The psychologists who are counseling appellant and Colleen obviously have no legal authority to sanction visits between mother and daughter in the absence of an order by the juvenile court. Indeed, either appellant or DHS would have to move the juvenile court to reimplement visitation if it was determined by the counselors, at some point in the future, that such visits would be in the best interest of the child.
Again, the juvenile court did not unlawfully delegate decision-making authority over the issue of visitation to mental health professionals. The eighth assignment is not well-taken.
 IX.
In her ninth assignment of error, appellant maintains that the juvenile court erred in failing to place Colleen with another family member. According to appellant, the placement of a dependent child with a family member is the preferred dispositional alternative. Appellant further argues that there were qualified family members and/or friends who were willing and able to accept custody of Colleen following the dispositional hearing. Despite this, appellant claims that the juvenile court refused to afford her the opportunity to present evidence of these dispositional options.
Although appellant asserts that the juvenile court refused to entertain evidence relating to familial placement, she cites nothing in the record to substantiate this claim. Moreover, a review of the transcript of the dispositional hearing demonstrates that appellant's assertion is unfounded. The juvenile court did not refuse to allow appellant the opportunity to present evidence of other qualified family members and/or nonrelatives who were willing and able to accept custody of Colleen. Indeed, it should be pointed out that appellant could have offered evidence at the dispositional hearing with regard to whom she wanted to have temporary custody of Colleen while she attempted to meet the goals of the DHS case plan. Appellant, however, did not even testify at the proceeding.
Finally, the juvenile court fully complied with the mandate of R.C. 2151.412(G)(4). It provides:
 "(G) In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:
 * * * (4) If the child has no suitable member of the child's extended family to accept legal custody of the child and no suitable nonrelative is available to accept legal custody of the child and, if the child temporarily cannot or should not be placed with the child's parents, guardian, or custodian, the child should be placed in the temporary custody of a public children services agency or a private child placing agency[.]"
 The juvenile court did not err in placing Colleen with DHS in light of the fact that no evidence was brought forward showing that a suitable member of the extended family or a suitable nonrelative was available to accept legal custody of the child. The ninth assignment lacks merit.
 X.
In her tenth and final assignment of error, appellant posits that the juvenile court erred in removing Colleen initially from the home, and then continuing the removal, without making the requisite determination that DHS made reasonable efforts to prevent the removal, to eliminate the continued removal, or to make it possible for the child to return safely home. This proposed error is rooted in the requirement set forth in R.C.2151.419(A)(1). This statute reads:
 "(A)(1) Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. * * * In determining whether reasonable efforts were made, the child's health and safety shall be paramount." See, also, Juv.R. 27(B)(1)(a)-(c) (stating a similar requirement that the juvenile court engage in a "reasonable efforts" determination in any proceeding involving dependency at which the court removes a child from the child's home).
 A juvenile court that is required to make a determination as described in R.C. 2151.419(A)(1) is supposed to issue written findings of fact setting forth the reasons underlying its determination. See R.C. 2151.419(B)(1). Moreover, if the juvenile court issues findings of fact supporting its written determination, such findings should briefly describe "the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from the child's home or enable the child to return safely home." Id.
According to appellant, there is nothing in the record to indicate that the juvenile court engaged in the statutorily mandated "reasonable efforts" determination. In support of this position, appellant points out that the juvenile court did not file any written findings of fact describing the relevant services provided by DHS to the family and why those services failed to prevent Colleen's removal from the home. Absent such findings in the record, appellant maintains that it must be assumed that the juvenile court failed to carry out its duty under R.C. 2151.419.
We disagree. Although it is advisable for a juvenile court to render express, written factual findings with respect to the reasonable efforts determination, the failure to do so does not automatically constitute reversible error if the record otherwise reflects that the juvenile court made the reasonable efforts determination or that diligent efforts were made to prevent the child's removal from the home. In the present case, the juvenile court did not make written findings of fact as is advisable under R.C. 2151.419(B)(1). There are, however, other indications in the record which amply demonstrate that the juvenile court engaged in the required reasonable efforts determination.
For instance, in the initial ex parte temporary order of November 24, 1998, the juvenile court stated the following:
 "The Court finds that the GCDHS has taken reasonable steps necessary to prevent the removal of the child from her home to the following extent, which the Court acknowledged for purposes of this ex parte order: as a result of her mother's conduct, the child, Colleen Graves, is suffering from extreme emotional distress and fear causing her to seek assistance from the GCDHS and/or the Chesterland Police on at least a daily basis; the GCDHS and/or the Chesterland Police have requested that the mother cooperate in their investigations concerning sexual abuse, seek voluntary mental health services and implement a safety plan and the mother has been unable to do so[.]" (Emphasis added.)
 In addition, on December 18, 1998, the record clearly shows that DHS filed a case plan whose ultimate goal was to reunify Colleen with her mother. The case plan contained very specific objectives relating to appellant's behavior and conduct. Thereafter, during the dispositional hearing on February 17, 1999, the evidence demonstrated that appellant had not made much, if any, progress toward achieving the stated objectives that applied to her.
On the whole, therefore, the record manifestly supports the conclusion that the juvenile court satisfied its duty under R.C.2151.419 to engage in the reasonable efforts determination, to wit: the court determined that DHS, as the public children services agency who filed the complaint in the case, had made reasonable efforts to prevent the removal of Colleen from the home, to eliminate the child's continued removal, and to make it possible for her to return safely home. The tenth assignment is not well-taken.
 XI.
Based on the foregoing analysis, the assignments of error are meritless. Accordingly, the judgment of the juvenile court is affirmed.
 ___________________________________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., NADER, J., concur.