OPINION
Defendant-appellant, Jeffrey M. Ferrell, appeals from the decision of the Carroll County Court of Common Pleas, Domestic Relations Division terminating a shared parenting plan and designating plaintiff-appellee, Deborah M. Ferrell, as the residential parent for the parties' minor son.
The parties were married on June 6, 1987 and one child, Zachary Thomas (d.o.b. 4/28/96), was born as issue of the marriage. The parties were divorced on January 15, 1999. The decree of divorce adopted the parties' separation agreement and shared parenting plan for Zachary. The shared parenting plan designated both parties as "residential parents." The plan divided the time Zachary spent with each of them fifty-fifty, with the parties exchanging physical custody of Zachary on a rotating three-day, two-day, two-day schedule.
On July 29, 1999, appellee filed a motion to terminate the shared parenting plan and designate her as the residential parent. Upon agreement of the parties, the court appointed Kathleen Allmon Stoneman (Stoneman) as guardian ad litem for Zachary. Stoneman filed her report (first G.A.L. report) with the court and recommended that the shared parenting plan remain in effect but that if the court decided to terminate it, then appellant should be designated the residential parent. Both parties later moved to dismiss the motion to terminate the shared parenting plan, which the court granted.
On May 23, 2001, appellant filed a motion to terminate the shared parenting plan, designate him as the residential parent, and reappoint Stoneman as the guardian ad litem. Appellant stated in his motion that Zachary, now age five, would begin kindergarten in the fall and the shared parenting plan was no longer practicable since the parties resided in different school districts. The court reappointed Stoneman as Zachary's guardian ad litem and held a hearing on the motion on August 10, 2001. Stoneman filed a second report (second G.A.L. report) in which she opined that it was a very close call, but that the court should designate appellant as the residential parent. In its August 15, 2001 judgment entry, the trial court granted appellant's motion to terminate the shared parenting plan; however, it determined that appellee would be Zachary's residential parent. Appellant requested findings of fact and conclusions of law, which the court filed on August 28, 2001. Appellant filed his timely notice of appeal on September 12, 2001.
Appellant raises six assignments of error. Assignments of error two through five are separate arguments in support of assignment of error number one; therefore, we will address them as such. Appellant's first assignment of error states:
 "THE TRIAL COURT ERRED IN DESIGNATING PLAINTIFF-APPELLEE THE RESIDENTIAL PARENT FOR THE REASONS STATED IN THE OTHER ASSIGNMENTS OF ERROR, WHICH JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY A SUBSTANTIAL AMOUNT OF COMPETENT AND CREDIBLE EVIDENCE, AND WHICH CONSTITUTED AN ABUSE OF DISCRETION."
Appellant alleges that the trial court's decision was against the manifest weight of the evidence because the court did not properly consider the evidence regarding specific statutory factors.
An appellate court will not reverse a trial court's decision regarding the custody of a child when it is supported by competent and credible evidence, absent an abuse of discretion. Bechtol v. Bechtol (1990),49 Ohio St.3d 21, syllabus of the court. In determining whether the trial court abused its discretion, we cannot simply substitute our judgment for that of the trial court. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. An abuse of discretion connotes more than an error in judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Id.
A trial court may terminate a shared parenting plan upon the request of one or both of the parents. R.C. 3109.04(E)(2)(c). When modifying a decree allocating parental rights and responsibilities, the trial court must consider specific factors to determine the best interest of the child, set out in R.C. 3109.04(F)(1). These factors include:
"(a) The wishes of the child's parents regarding the child's care;
"(b) If the court has interviewed the child in chambers * * *, the wishes and concerns of the child, as expressed to the court;
"(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
"(d) The child's adjustment to the child's home, school, and community;
"(e) The mental and physical health of all persons involved in the situation;
"(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
"(g) Whether either parent has failed to make all child support payments, * * *;
"(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *;
"(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
"(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." R.C. 3109.04(F)(1).
Factors (b), (g), (h), (i), and (j) are not relevant to this case. The trial court made the following findings regarding the remaining statutory factors. Zachary interacts well with both parents in both homes and also interacts well with appellee's fiancé. He has adjusted equally well to both of his homes and communities. The parties do not suffer from any physical or mental health problems and Zachary's vision problem is being actively treated. Both parties recognize the importance of helping Zachary maintain close ties with his extended family on both sides. The court and the guardian ad litem share a concern that appellant will be less likely to honor and facilitate companionship with appellee or to encourage appellee to be involved in Zachary's school work and activities.
Appellant's second assignment of error states:
 "THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT-APPELLANT WAS LESS LIKELY TO HONOR AND FACILITATE COMPANIONSHIP THAN PLAINTIFF-APPELLEE. (ORC SECTION 3109.04(F)(1)(f) [sic.]."
Appellant disagrees with the court's finding that, "[a]s the guardianad litem observes, she and the court share a concern that [appellant] is less likely to facilitate companionship as the custodial parent (F)(1)(f) or to encourage [appellee] to be involved in Zachary's academic and/or social development." (Aug. 28, 2001 Judgment Entry). Appellant cites to the first G.A.L. report for support. He points out that Stoneman found that "* * * father would ensure that Zachary had a strong relationship with his mother, whereas mother would tend to dominate Zachary's life at the expense of a relationship between Zachary and his father. In my opinion, father would be more likely to honor and facilitate companionship rights for mother than the reverse." (First G.A.L. report, p. 9). Appellant also points out that when he was asked about what visitation he deemed appropriate should he be named residential parent, he testified that appellee should have some weekday visitation, extended weekend visitation when school permitted and equal time in the summer. Appellant largely relies on the first G.A.L. report to support his position. The second G.A.L. report does not mention which parent would be more or less likely to honor and facilitate visitation. In the second G.A.L. report, Stoneman stated that appellee complained of appellant's stubbornness and refusal to compromise on several visitation issues. Appellee also complained to Stoneman that appellant is non-communicative with her about Zachary's activities. (Second G.A.L. report). Stoneman expressed as one of her concerns with appellant being named residential parent, that appellant would not keep appellee informed about activities for Zachary. (Second G.A.L. report).
As further support for the trial court's concern, the following testimony was revealed. Appellee testified that at Zachary's daycare in Canton, which he attends while living with appellee, she listed appellant as one of Zachary's emergency contacts. She also testified that she informed appellant as to the daycare facility's address and phone number by giving him a magnet to put on his refrigerator with the information. Conversely, an employee at Zachary's daycare in Carrollton, which he attends when residing with appellant, testified that appellant never provided them with appellee's name or address.
Appellant did testify that he would honor and facilitate visitation. However, when asked if he would keep appellee informed of Zachary's school issues, appellant responded that he would but that appellee would have to ask him to do so. From the transcript, it seems that appellant became argumentative during this line of questioning.
Although Stoneman never explicitly stated that appellant would be less likely to facilitate companionship in the second G.A.L. report, she was concerned that appellant would be less likely to encourage appellee to be involved in Zachary's activities. Furthermore, even if the parties were equally likely to facilitate companionship and encourage the other to be involved in Zachary's activities, the court still cannot be said to have abused its discretion in naming appellee as the residential parent. Thus, appellant's second assignment of error is without merit.
Appellant's third assignment of error states:
 "THE TRIAL COURT ERRED IN FINDING THAT THE MINOR CHILD HAS ADJUSTED EQUALLY WELL TO BOTH OF HIS RESPECTIVE COMMUNITIES (ORC SECTION 3109.04(F)(1)(d) [sic.] AND THAT BOTH PARTIES APPEAR TO RECOGNIZE THE IMPORTANCE OF MAINTAINING CLOSE TIES FOR ZACHARY WITH THE MEMBERS OF HIS EXTENDED MATERNAL AND PATERNAL FAMILIES (ORC SECTION 3109.04(F)(1)(c) [sic.]."
Appellant disagrees with the trial court's findings that Zachary "has adjusted equally well to both of his homes and respective communities" and that "[b]oth parties appear to recognize the importance of maintaining close ties for Zachary with the members of his extended maternal and paternal families." (Aug. 28, 2001 Judgment Entry). Appellant argues that these findings are inaccurate. Appellant argues that when Zachary has resided with him, he has lived in the same home the entire time. However, appellee has moved four times since the divorce. Appellant also points out that Zachary has more family ties in his community in Dellroy than in appellee's community in Canton.
Although appellee has moved several times since the divorce, there was no evidence presented that Zachary is not well adjusted to his home in Canton with appellee. Stoneman specifically found that Zachary is a happy, well-adjusted child and that both parties deserve credit for this. (Second G.A.L. report). Gloria Boley, Zachary's daycare teacher, also testified that Zachary seems to be well adjusted. Additionally, appellee testified that each time she moved it was an improvement. Her last move was approximately one year ago when she and her fiancé, whom she has been with for two years, purchased a home from her brother in Canton where she plans to continue to live.
The evidence also established that Zachary enjoys a good relationship with appellee's fiancé, Jon. Stoneman indicated that Zachary speaks favorably of Jon and that he enjoys golfing with him. Appellee testified that Zachary has a good relationship with Jon and looks up to him by wanting to dress like Jon and play golf with him. The court found that Jon has a positive influence on Zachary and his presence in appellee's household provides stability.
As to the court's finding that both parties recognize the importance of maintaining close family ties for Zachary, Stoneman made no explicit findings regarding this factor. Still, the following evidence supports this finding. Appellant testified that Zachary has many extended family members in the Dellroy area including several aunts, uncles and cousins, and his maternal grandmother. Appellee testified that, in Canton, Zachary has an aunt and his paternal grandmother. Appellee testified that she has no problem with maintaining relationships for Zachary with his paternal relatives. She also testified that when she picks up Zachary from appellant's home, they stop and visit with her mother and sometimes her sisters and that she invites the family to visit at her home. Appellant's testimony revealed that he relies on some of Zachary's aunts and uncles to care for Zachary while he is at work. He also testified that if Zachary attended school in Dellroy, he would have a cousin in the same class and an aunt working at the school. Appellant further testified that he and Zachary visit with Zachary's maternal relatives in the area.
Given the above evidence, it cannot be said that the trial court abused its discretion in finding that Zachary has adjusted equally well to both of his communities and that both parties recognize the importance of maintaining close family ties for Zachary. Thus, appellant's third assignment of error is without merit.
Appellant's fourth assignment of error states:
 "THE TRIAL COURT ERRED IN FINDING THAT THERE ARE NO MENTAL OR PHYSICAL HEALTH ISSUES INVOLVING THE CHILD. (ORC SECTION 3109.04(F)(1)(e) [sic.]."
Appellant argues that the trial court's finding that Zachary has no physical health issues is erroneous. Appellant argues that Zachary has a serious eye condition which appellee has not tended to in a timely fashion. Again appellant relies on the first G.A.L. report in which Stoneman opined that, "I do not believe that [appellee] is intentionally neglectful of Zachary's medical needs. I do believe, however, she tends to deny what she does not want to admit. * * *. This can have dangerous consequences when it involves serious medical problems." (First G.A.L. report, p. 11). Appellant asserts that he testified that he made the majority of the effort to see to Zachary's medical needs. He also maintains that the testimony revealed that appellee waited at least a week to get Zachary's new eyeglass prescription filled.
Zachary has an eye condition that requires special treatment and accommodations. The trial court found that the parties are actively treating Zachary's vision problem. Stoneman found in the second G.A.L. report that both parties had enrolled Zachary in their respective school districts and that they had both made the special arrangements recommended by Zachary's ophthalmologist. (Second G.A.L. report). She also found that while the parties have a problem discussing issues regarding Zachary, they are able to talk about the treatment of his eye disorder. (Second G.A.L. report). Furthermore, in the second G.A.L. report, Stoneman did not express any concern that either party was not actively treating Zachary's eye disorder or that appellee would not seek the appropriate medical care for her son.
The testimony at the hearing revealed that while appellee did wait to fill Zachary's eyeglass prescription, Zachary's doctor had explained the change in prescription was minor and that she could wait to get it filled. Appellant testified that he makes the majority of the effort to tend to Zachary's medical needs. However, he also testified that he and appellee went together to Akron Children's Hospital to speak with an expert about Zachary's eye condition. Elaine Dingler, appellee's sister, testified that she first brought to the parties' attention that Zachary might have an eye disorder because her son has the same condition. She testified that both parties initiated treatment for Zachary, but that she thought appellant was the one who followed through on it.
Based on the above evidence, we cannot say that the trial court abused its discretion in finding that Zachary's vision problem is being actively treated. Accordingly, appellant's fourth assignment of error is without merit.
Appellant's fifth assignment of error states:
 "THE TRIAL COURT ERRED IN DESIGNATING PLAINTIFF-APPELLEE RESIDENTIAL PARENT CONTRARY TO THE RECOMMENDATIONS OF THE COURT-APPOINTED GUARDIAN AD LITEM."
Appellant asserts that he and appellee stood on equal consideration as to whom the court should name as Zachary's residential parent since they both cared for him equally since the divorce. Appellant argues that Stoneman opined, not once, but twice that appellant should be designated the residential parent. He further argues that he has addressed Stoneman's concerns with regard to him being designated the residential parent. He states that his employer is flexible and will give him the time off he needs to attend to Zachary's appointments and extracurricular activities. He also states that although his place of employment is thirty minutes away from the school Zachary would attend, Zachary's extended family in the community will respond to any emergency situation until appellant can get there. Furthermore, appellant argues that appellee does not provide the stability for Zachary that he provides. Appellant also notes that attending the Canton City School District, which Zachary will attend if he resides with appellee, will be a bigger adjustment than attending the Carrollton Local Schools, which Zachary will attend if he resides with appellant.
A guardian ad litem's role in any proceeding is to investigate the child's situation and make a recommendation to the court that he or she believes is in the child's best interest. In re Baby Girl Baxter (1985),17 Ohio St.3d 229, 232. However, the ultimate decision is for the trial judge and not a representative of the children. Warnecke v. Warnecke, 3rd Dist. No. 12-2000-10, 2001-Ohio-2135, 2001 WL 122017 at *3; In re Height
(1975), 47 Ohio App.2d 203, 206.
While Stoneman did recommend that the court designate appellant as Zachary's residential parent, she qualified this recommendation. In her report, Stoneman stated:
 "This report is perhaps the most difficult report the undersigned has ever had to file with this Court for the reason that it is obvious that either parent would provide Zachary with a loving, safe environment. Should the Court decide that [appellee] in this case would be better suited to be named residential parent, this Guardian Ad Litem has no serious objections to that decision." (Second G.A.L. report, p. 10).
She stated later in her report, "I cannot emphasize enough how close a call this decision is on my part." (Second G.A.L. report, p. 12).
Given how close a call Stoneman believed this case to be, it cannot be said that the trial court abused its discretion in not adopting Stoneman's recommendation. Accordingly, appellant's fifth assignment of error is without merit.
In addition to the factors discussed in assignments of error two through five, the trial court had additional reasons for designating appellee as the residential parent. One of the main circumstances in support of the trial court's decision was where Zachary would attend school and his after-school care. The court found that if appellee was designated residential parent, Zachary would attend Mason Elementary in Canton. At Mason, Zachary would attend school all day Monday through Friday. Two teachers and two assistants would staff his classroom of approximately twenty students. Mason is located approximately fifteen minutes from appellee's place of employment. Mason would provide Zachary with an Individual Education Plan (IEP) to accommodate his special vision needs.
The court additionally found that if it designated appellant as the residential parent, Zachary would attend Dellroy Elementary in Carrollton. At Dellroy, Zachary would attend school either two or three days a week on an alternating week schedule. The court found that this schedule would require Zachary to spend considerable time with a babysitter and/or daycare service while appellant is at work. Dellroy is located approximately thirty to forty-five minutes from appellant's place of employment, which is significant in case of an emergency. Dellroy can likewise provide Zachary with an IEP to accommodate his needs.
The court found important the fact that if it named appellant as the residential parent, Zachary would spend a considerable amount of time in daycare or with a babysitter. However, if it named appellee as the residential parent, Zachary's need for daycare would be significantly reduced, if not eliminated, since appellee modified her work schedule to accommodate Mason's school hours.
Additionally, the court stated that while it does not condone "cohabitation without benefit of clergy," it found that appellee's fiancé is a positive influence in Zachary's life and they enjoy a good relationship. It also found that a natural parent and stepparent household often provides more stability for a child than does a single parent household since it usually involves less time spent in daycare or with a babysitter.
Thus, we cannot say that the trial court abused its discretion in designating appellee as Zachary's residential parent. Competent, credible evidence exists to support the trial court's decision. Accordingly, appellant's first assignment of error is without merit.
Appellant's sixth assignment of error states:
 "THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE ATTEMPTED TO BE INTRODUCED BY DEFENDANT-APPELLANT CONCERNING THE RELATIONSHIP OF PLAINTIFF-APPELLEE AND HER DAUGHTER FROM A PREVIOUS MARRIAGE."
Appellant argues that the trial court should have allowed him to introduce evidence regarding appellee's relationship with her daughter, Ashley. Appellant claims that this evidence showed how appellee nurtured and raised her daughter and that such evidence was relevant to Zachary's best interest.
We will not overturn a trial court's ruling on the exclusion of evidence on appeal absent a showing of clear and prejudicial abuse of discretion. Locke v. Locke, 7th Dist. No. 00-CO-10, 2001-Ohio-3398, ¶ 42, 2001 WL 1155852 at *5, citing Rigby v. Lake County (1991),58 Ohio St.3d 269, 271.
The trial court ruled that the evidence concerning Ashley was not relevant to Zachary. Relevant evidence is any evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. "Evidence which is not relevant is not admissible." Evid.R. 402.
The trial court ruled that it would only permit appellant to introduce evidence concerning Ashley if appellant tied it into any impact on Zachary. Appellant attempted to question appellee regarding whether Ashley ever smoked when she was age fifteen and whether she became pregnant before age eighteen. The court determined that this evidence was not relevant and instructed appellant to move along.
At the date of the hearing, Ashley was eighteen years old, emancipated, and no longer resided with appellee. Appellant attempted to question appellee and appellee's sister, Ms. Dingler, about issues involving Ashley. Appellant failed to tie these questions into any impact on Zachary as the trial court instructed. When appellant questioned Ms. Dingler regarding if appellee was there for her children, including Ashley, after the divorce, Ms. Dingler stated that she could only testify as to hearsay. Additionally, appellant attempted to question Ms. Dingler about a conversation she had with Ashley, which also constituted hearsay. When appellant questioned appellee about Ashley, the questions focused solely on whether Ashley ever smoked and whether she became pregnant before turning eighteen. Given the trial court's broad discretion in admitting and excluding evidence, it cannot be said that the court abused its discretion in disallowing appellant to introduce evidence regarding Ashley's past. Furthermore, had the court allowed such evidence, there is no indication that it would have effected the court's decision in designating appellee as Zachary's residential parent.
Thus, appellant's sixth assignment of error is without merit.
For the reasons stated above, the decision of the trial court is hereby affirmed.
Waite, J., and DeGenaro, J., concur.